[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: MOTION TO STRIKE #171
On August 16, 1989, the plaintiff, BRT Corporation ("BRT"), filed a revised complaint with co-plaintiff Barry J. Bertram. The complaint alleged that BRT contracted with Mr. Bertram to design and construct additions and improvements to Mr. Bertram's house, including a terrace. BRT subsequently subcontracted with New England Roofing ("NER"), a subsidiary of New England Masonry ("NEM"), the defendant. NER contracted to provide the roofing system for Mr. Bertram's new terrace. BRT alleged that NER agreed to provide a waterproof roofing system, built in a workmanlike manner, employing sound engineering principles and material that was not defective. The revised complaint contained five counts, the first of which alleged that NER breached its contract with regard to the aforementioned elements.
Count two of the revised complaint alleged that NER was negligent and careless in providing the roofing system. The third count asserted that NEM is liable under Connecticut's Product Liability Act ("CPLA"), General Statutes 52-572m et seq., for damages to Mr. Bertram caused by the defective roofing system. The fourth count alleged that Mr. Bertram has, for valuable consideration, assigned his rights against NEM to BRT, and NEM is liable for its negligence to BRT. Count five alleged that NEM is liable to BRT under the CPLA.
Pursuant to the defendant's September 25, 1989 motion to strike, the court, Pickett, J., struck counts one, two and three of the revised complaint because they asserted claims on behalf of Mr. Bertram, who relinquished any such claims when he assigned his rights to BRT. NEM also sought to strike count four on the ground that claims under CPLA are governed exclusively by that act and, consequently, this count, sounding in negligence, must be stricken. The court, on January 3, 1990, denied the motion to strike without prejudice as it pertained to count four because the plaintiff is entitled to plead in the alternative its various theories of liability. Thereafter, on August 20, 1990, BRT filed a substitute complaint in compliance with the court's ruling on the motion to strike.
On September 27, 1990, NEM filed a request to revise the substituted complaint, asserting that counts one, two and three thereof did not conform to the January 3, 1990 ruling on the motion to strike. BRT, in its memorandum opposing the motion, argued that it had complied with the ruling on the motion to strike, and that, inter alia, the product liability claim asserted by BRT in count five of its revised complaint was undisturbed in the January 3, 1990 ruling on the motion to strike. On May 3, 1991, the court, Susco, J., denied NEM's request to revise.
On November 7, 1990, BRT moved for an exemption from the dormancy program CT Page 9097 on the basis that the case had been prosecuted with reasonable diligence. The court, Dranginis, J., granted the motion on November 16, 1990. On May 30, 1991, a judgment of default for failure to plead was entered against the defendant by the court, Pickett, J. On June 6, 1991, the defendant moved to reopen the default and, on July 17, 1991, the court, Pickett, J., granted the motion and permitted the defendant to file a motion to strike if such motion were filed within ten days. On June 28, 1991, the defendant filed a motion to strike count three of the substituted complaint on the ground that BRT is seeking damages therein pursuant to General Statutes 52-572m
et seq., and that commercial losses between two commercial parties cannot be recovered under this statute. In accordance with Practice Book 155, the defendant submitted a memorandum in support of its motion. On August 30, 1991, the plaintiff filed a memorandum in opposition to the motion to strike.
A motion to strike tests the legal sufficiency of a pleading and "admits all facts well pleaded." Ferryman v. Groton, 212 Conn. 138, 142,561 A.2d 432 (1989). Furthermore, the court is required to construe the facts in the complaint most favorably to the plaintiff when considering a motion to strike. Gordon v. Bridgeport Housing Authority, 208 Conn. 161,170, 544 A.2d 1185 (1988).
The defendant, in its motion to strike, argues that because CPLA provides an exclusive remedy for a claim falling within its ambit, the parameters of that statute control this matter. NEM claims that both NEM and BRT are commercial parties and that, because BRT seeks commercial damages, General Statutes 52-572m, et seq. is inapplicable here.
The plaintiff, in its memorandum in opposition to the motion to strike, does not argue the merits of the defendant's motion. Rather, the plaintiff attacks the procedural underpinnings upon which the motion rests. BRT states that the count which the defendant seeks to strike was present when the defendant moved to strike the revised complaint on September 25, 1989. The plaintiff claims that the defendant, whose previous motion to strike did not contain this argument, is seeking to attack this count in an alternative, seriate pleading. The plaintiff also argues that because this case was on the dormancy calendar, the only proper pleading is an answer closing the pleadings. Consequently, the plaintiff states that the motion to strike should be denied.
Count five of the amended complaint asserted a claim on behalf of BRT founded on General Statutes 52-572m et seq. This claim was also put forth in Count three of that complaint on behalf of Mr. Bertram The defendant moved to strike count three, the product liability claim as it pertained to Mr. Bertram on the basis that Mr. Bertram had assigned his rights to BRT, thereby relinquishing any claims he may have had against NEM. Never in the first motion to strike, however, did NEM move to strike count five, also a claim based upon General Statutes 2-572m et seq., pertaining to BRT. Furthermore, in its motion to strike the amended complaint, NEM failed to put forth the argument it asserts herein. Additionally, the CT Page 9098 defendant sought to have the substituted complaint revised to exclude the products liability claim contained in count three on the ground that such was stricken pursuant to the granting of the earlier motion to strike. This request was denied on May 3, 1991. Now, the defendant attempts to strike this same product liability claim through another approach, and BRT claims that by not asserting such an argument in its earlier motion to strike, NEM has waived its right to assert such now.
However, because the plaintiff has filed a substitute complaint pursuant to Practice Book 157, the substitute complaint became the controlling pleading, and the prior complaint was removed from the case in accordance with Practice Book 158. Royce v. Westport, 183 Conn. 177, 178, 439 A.2d 298
(1981). See also Good Humor Corp. v. Ricciuti, 160 Conn. 133, 136,273 A.2d 886 (1970). In Royce, following the granting of a demurrer, the plaintiff filed a substitute complaint. Thereafter, the defendant filed a request to revise the substituted complaint, and the request was granted. The Supreme Court, in finding error only as to the form of the judgment rendered, accepted this order of pleadings as proper. Royce, supra at 187. Thus, Royce is analogous to the present case in that, following the granting of a motion to strike, the plaintiff filed a substitute complaint. In Royce the defendant followed the order of pleadings as set forth in Practice Book 112 by filing a request to revise the substitute complaint. Here, the defendant filed a motion to strike. Because the Royce court found that the request to revise was proper, in the present case, the motion to strike is properly filed, as the filing of the substitute complaint, as was the case in Royce, triggered a new beginning to the order of the pleadings as set forth in Practice Book 112.
The plaintiff also argues that because this case appeared on the dormancy calendar, only an answer can be filed, thereby closing the pleadings. This is, in fact, the general standard, "unless the court otherwise orders." The Balf Co. v. Milledge, 3 CSCR 276, 277 (February 1, 1988, Hennessey, J.). In the present case the court, Pickett, J., did "otherwise order" when it granted the defendant's request to file a motion to strike if it did so within ten days. Thus, the plaintiff's argument regarding the dormancy calendar will not defeat the motion to strike and, accordingly, the motion must be considered on its merits.
The CPLA is "`an exclusive remedy for claims falling within its scope.'" Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 73, 579 A.2d 26
(1990) (quoting Winslow v. Lewis-Shepard, Inc., 212 Conn. 462, 471,562 A.2d 517 (1989). A product liability claim "may be asserted and shall be in lieu of all other claims against product sellers, including actions in negligence, strict liability and warranty, for harm caused by a product.'" Winslow, supra at 465 (quoting General Statutes 52-572n(a)) (emphasis added). General Statutes 52-572m defines harm as including "damage to property, including the product itself, and personal injuries including wrongful death. As between commercial parties, `harm' does not include commercial loss." United Sec. Inc. v. PGP Indus., 1 CTLR 388, CT Page 9099 389 (March 21, 1990, Murray, J.) (quoting General Statutes 52-572m(d)). Indeed, 52-572n(c) states that "[a]s between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by, title 42a, the Uniform Commercial Code."
Thus, if BRT and NEM are deemed to be commercial parties, and if BRT is seeking damages for a commercial loss, 52-572m et seq. is inapplicable here, and the defendant's motion to strike would have to be granted. When "analyizing a statute, it is required that `words and phrases shall be construed according to the commonly approved usage of the language.'" Continental Ins. Co. v. Cebe-Habersky, 214 Conn. 209, 214,571 A.2d 104 (1990) (quoting General Statutes 1-1(a)).
The word "commercial" has been defined as relating "to `commerce' and has profit or success as its chief aim." PGP Industries, supra at 389 (citing to The American Heritage Dictionary of the English Language, 267 (1978)). Additionally, "commercial" is defined as "[i]nvolved in work that is intended for the mass market." The American Heritage Dictionary, 297 (2d ed. 1982). Accordingly, both NEM and BRT are commercial parties, as both participate in enterprises involved in work intended for the mass markets and both have profit or success as their chief aim.
The next issue is whether or not the damages sought by BRT are for commercial losses. Commercial losses have been defined as a "loss of profits or consequential economic losses as opposed to property damage and personal injuries." American Mfrs. Mut. Ins. Co. v. Harrington Hoists, Inc.,4 C.S.C.R. 564, 565 (June 13, 1989, Berdon, J.) "Consequential damages" have been defined as "includ[ing] (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) injury to person or property proximately resulting from any breach of warranty." General Statutes 42a-2-715 (2). "Commercial loss" does not include property damage or personal injury as between the commercial parties." Harrington Hoists, Inc., supra at 565.
In the third count of its complaint, BRT asserts a claim, pursuant to General Statutes 52-572m et seq., seeking recovery of the costs it allegedly owes to Mr. Bertram as a consequence of the poor roof. Thus, insofar as BRT seeks damages for economic costs derived from labor, operating costs, lost profits, and liability for damages to Mr. Bertram's roof, such damages represent commercial loss as is stated in General Statutes52-572m, et seq., and the motion to strike count three of the substitute complaint are granted.
PICKETT, JUDGE