THE CONTINENTAL INSURANCE COMPANY *v.*
EDWARD CEBE-HABERSKY
(13756)

HEALEY, SHEA, CALLAHAN, COVELLO and F. HENNESSY, Js.

Argued December 8, 1989—decision released March 20, 1990

*Jack D. Garamella,* with whom, on the brief, was *Eva M. DeFranco,* for the appellant (defendant).

*Frederick J. Trotta,* with whom were *Joseph F. Trotta* and, on the brief, *Eileen M. Condon,* for the appellee (plaintiff).

COVELLO, J. This is an appeal from a judgment of the trial court vacating a $40,000 underinsured motorist arbitration award. The sole issue is whether a claimant's access to underinsured motorist insurance first requires the payment of the limits of the liability policy insuring the person responsible for the accident. We conclude that such payments are required.

On November 30, 1985, the plaintiff, The Continental Insurance Company (Continental), had in force an automobile liability policy insuring the defendant, Edward Cebe-Habersky. The policy contained an endorsement providing uninsured and underinsured motorist coverage in the amount of $300,000.

On November 30, 1985, Cebe-Habersky was injured while riding as a passenger in an automobile owned and

operated by Troy Knapp. The accident occurred when Knapp fell asleep at the wheel and the auto swerved off the road. The defendant, a thirty year old married electrician, fractured his nose and severely lacerated his face. He incurred medical expenses of $12,357.70, lost wages of $2260, and was left with four residual scars, two on his forehead, one on his cheek and one on his chin.

On June 4, 1987, Progressive Insurance Company (Progressive), the insurer of the Knapp vehicle, paid the defendant $17,000. The $17,000 payment was $3000 less than the $20,000 limits of the Progressive policy.

On September 15, 1987, the defendant made a demand for arbitration against Continental claiming that he had been injured by the negligent acts of an underinsured motorist.[1] The matters submitted to the arbitrators were: (1) whether full payment on the tortfeasor's (Progressive's) policy was a condition precedent to Continental's obligation to pay; and (2) the value of the defendant's damages.

On December 14, 1988, the arbitration panel found that the defendant's damages were $60,000. It then ordered Continental to pay the defendant $40,000, stating that this sum was "the value of the damages sustained by the claimant in excess of the $20,000 coverage on the vehicle of the underinsured tortfeasor."

The plaintiff filed an application in Superior Court to set aside the arbitration award.[2] The trial court,

---

[1] The Continental policy provided: "If we cannot agree with a covered person on either: (a) the amount of damages; or (b) whether such person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle; then the covered person may make a written demand for arbitration. . . ."

[2] General Statutes § 52-418 provides: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any one of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

*W. Sullivan, J.,* vacated the award, concluding that the "limits of the primary policy had not been 'exhausted' [as required by] General Statutes § 38-175c (b) (1)."[3] The defendant appealed to the Appellate Court. We thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.

General Statutes § 38-175c (b) (1) obligates insurance companies to pay on a policy's uninsured motorist coverage only after "the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident *have been exhausted by payment of judgments or settlements . . . ."* (Emphasis added.) Despite the straightforward language of the statute requiring "exhaust[ion] by payment," the defendant argues that by crediting Continental with the full policy limits of the tortfeasor's policy through subtraction of $20,000 from the $60,000 damages, the limits of liability of the bodily injury liability policy applicable at the time of the accident have been exhausted.

"Exhaust" means "to draw off or *let out completely:* to use up; [or] *wholly expend."* (Emphasis added.) Webster's Seventh New Collegiate Dictionary. There is nothing in the common meaning of "exhaust" to suggest that partial use of what is available amounts to its exhaustion.

The defendant points to a definition of "exhaust" in Webster's Third New International Dictionary, that

---

[3] General Statutes § 38-175c (b) (1) provides: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage."

reads: "to make use of or try out or *otherwise account for* the whole number of." (Emphasis added.) This definition constitutes less than two lines of a thirty-one line definition of "exhaust" found in the Third New International Dictionary. In analyzing a statute, it is required that "words and phrases shall be construed according to the *commonly approved usage* of the language." (Emphasis added.) General Statutes § 1-1 (a). We conclude that the definition posited by the defendant does not constitute a commonly approved usage of the word "exhaustion." Our definition, moreover, accords with the intent of § 38-175c (b) (1), which seems to equate "exhaustion" with the "limits of liability," i.e., $20,000.

Even were this definitional obstacle somehow overcome, the defendant simply does not address the further requirement of § 38-175c (b) (1) that the other policies must be "exhausted by *payment* of judgments or settlements." (Emphasis added.) Here there was no "payment" to the claimant, but rather a credit was issued to his uninsured motorist carrier.

We are entitled to presume that if the legislature intended that a tortfeasor's policies were to be accounted for by means other than "exhaust[ion] by payment," language to that effect would appear in the statute. "[W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. *State* v. *White,* 204 Conn. 410, 421, 528 A.2d 811 (1987); *Beloff* v. *Progressive Casualty Ins. Co.,* 203 Conn. 45, 54–55, 523 A.2d 477 (1987); *State* v. *Blasko,* 202 Conn. 541, 553, 522 A.2d 753 (1987)." *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 193, 530 A.2d 171 (1987).[4]

---

[4] While we see no ambiguity in this portion of General Statutes § 38-175c (b) (1) that would require such an examination, portions of the legislative history surrounding this enactment may be found in *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 195, 530 A.2d 171 (1987).

There is no error.

In this opinion HEALEY and F. HENNESSY, Js., concurred.

SHEA, J., with whom CALLAHAN, J., joins, dissenting. I disagree with the majority that General Statutes § 38-175c (b) (1), by providing that an uninsured motorist insurance carrier becomes obligated to pay after the applicable liability coverage has been "exhausted by payment of judgments or settlements," was intended to work a forfeiture of uninsured motorist coverage for an insured accident victim, like the defendant, who has settled his claim against the tortfeasor for less than the limit of the applicable liability insurance. The effect of the majority's holding is to require a victim who has uninsured motorist coverage exceeding the limit of the tortfeasor's liability insurance to obtain the last dollar of that insurance under the penalty of losing the entire benefit of his uninsured motorist coverage. By requiring the victim to obtain the full amount of the tortfeasor's liability coverage before proceeding against the uninsured motorist carrier, the majority has erected a barrier to the settlement of liability claims that is likely to have a serious impact upon our overburdened jury trial docket.

In *Longworth* v. *Van Houten,* 538 A.2d 414, 423–24 (N.J. Super. App. Div. 1988), the court, recognizing the harmful effects that would otherwise result with respect to the insured's net recovery, the delay in the litigation of claims and the increased burden cast upon the court system, construed the New Jersey statute defining an underinsured motor vehicle, which is virtually identical to § 38-175c (b) (1), to require by the phrase "exhausted by payment of judgments or settlements" only that the underinsured motorist insurer be credited with the full amount of the liability insurance available. "The requirement that the insured obtain the

tortfeasor's entire policy limits as a condition of prosecuting his right to [underinsured motorist] benefits is so antithetical to the policies underlying the statute that we are constrained to conclude that the Legislature could not have so intended." Id. In *Schmidt* v. *Clothier,* 338 N.W.2d 256, 261 (Minn. 1983), the court held that a similar exhaustion provision contained in an underinsured motorist insurance policy was contrary to public policy and void because of its effect in diminishing by litigation expenses the net recovery of the insured and in creating a barrier to settlement that would result in overburdening the courts. Other courts have ruled similarly with respect to such policy provisions. *Weinstein* v. *American Mutual Ins. Co. of Boston,* 376 So. 2d 1219, 1220 (Fla. App. 1979); *Liberty Mutual Ins. Co.* v. *Reyer,* 362 So. 2d 390, 391–92 (Fla. App. 1978).

I do not believe that the legislature, in defining the obligation of an insurer for the purpose of underinsured motorist coverage, intended to impose on the courts as well as the insured the burden of litigating each claim to an ultimate judgment unless the liability carrier pays the full amount of its coverage by way of settlement. The majority opinion does not suggest any possible benefit that can flow from such a requirement. In all probability, the legislature intended simply to limit the insurer's obligation by allowing a deduction from the value of the underinsured motorist claim for the amount of liability insurance available.

Nor do I believe that the phrase "exhausted by payment of judgments or settlements" compels us to adopt an interpretation that produces results having no reasonable justification. The word "exhaust" does not invariably mean drained to the last drop, as the majority assumes. The definition advanced by the defendant, "to make use of or try out or otherwise account for the whole number of," is acceptable accord-

ing to common usage. Webster's Third New International Dictionary. In this case the liability insurance has been accounted for and the insurer has received the full benefit thereof by the arbitrators' award subtracting from the $60,000 of damages sustained by the defendant the $20,000 of coverage on the tortfeasor's vehicle. I would affirm the award.

Accordingly, I dissent.