Sheila CURRAN and Mark
Barnhill, Appellants,

v.

PROGRESSIVE NORTHWESTERN IN-
SURANCE COMPANY, State Farm Mu-
tual Automobile Insurance Co., and
Government Employees Insurance Co.,
Appellees.

Nos. S–9311, S–9355.

Supreme Court of Alaska.

Aug. 31, 2001.

Michael J. Schneider, Law Offices of Michael J. Schneider, P.C., Anchorage, and Christopher W. Rose, Palmer, for Appellants.

Susan M. West, Guess & Rudd, P.C., Anchorage, for Appellee Progressive Northwestern Insurance Co.

Joe M. Huddleston, Hughes Thorsness Powell Huddleston & Bauman LLC, Anchorage, for Appellee State Farm Mutual Automobile Insurance Co.

Barry J. Kell, Wilkerson & Associates, Anchorage, for Appellee Government Employees Insurance Co.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

### OPINION

BRYNER, Justice.

## I. INTRODUCTION

This case involves insurance claims arising from two vehicular accidents. Sheila Curran was injured in a single-vehicle accident. After declining to bring a claim against the driver or his liability insurer, she made claims under both the driver's and her own underinsured motorist (UIM) policies. Both underinsurers denied her claims, asserting that she had failed to exhaust the underlying liability policy limits as required by statute and the UIM policies. Mark Barnhill was injured in a two-car collision. Barnhill eventually settled with the tortfeasor's insurer for less than half the liability policy limits. Barnhill's own underinsurer denied his UIM claim, asserting that he had failed to exhaust the liability policy limits. We are asked to decide whether Curran's and Barnhill's offers to the underinsured motorist insurers of a credit in the amount of the liability policy limits are equivalent to exhausting the policy limits as required by their UIM policies and by Alaska law. Because the underlying limits were not "used up" as AS 28.20.445(e)(1) requires, we hold that the offers of credit are not equivalent to exhaustion of policy limits and affirm the superior court's judgment.

## II. FACTS AND PROCEEDINGS

### A. Curran's Claim

In October 1992 Sheila Curran suffered serious injuries in a single-vehicle accident after her husband lost control of the vehicle in which they were riding. Her husband, Ed Fayette, was insured by Progressive Northwestern Insurance Company. His liability policy and UIM coverage each had a policy limit of $50,000 per person. At the time of the accident, Curran was the named insured on her own UIM policy with State Farm Mutual Automobile Insurance Company, which had policy limits of $100,000 per person.

Curran did not sue Fayette or make a claim under his liability policy, but she sued both Progressive and State Farm, seeking UIM coverage. Curran offered Progressive and State Farm each a $50,000 credit because she elected to forgo making a claim under her husband's liability policy. This credit would also include applicable "add-ons" of prejudgment interest and attorney's fees. Her suit asked for a declaration that the UIM coverage of Fayette's Progressive policy and her own State Farm policy had been triggered.

Both Progressive and State Farm argued that Curran was not entitled to UIM benefits because she had failed to exhaust Fayette's

liability policy limits as required by statutory and policy language.[1]

The superior court granted summary judgment to both insurers. Curran appeals.

### B. Barnhill's Claim

In 1991 Mark Barnhill suffered injuries in a two-car collision with Daren Walters. Barnhill was insured by Government Employees Insurance Company (GEICO) and had UIM coverage of $100,000 per person. Walters had a State Farm liability policy with a limit of $50,000. GEICO authorized Barnhill to accept a pre-trial settlement with Walters based on State Farm's $50,000 policy limits.[2] Instead, State Farm offered Barnhill a settlement that fell below the policy limit.[3] GEICO did not object to State Farm's settlement offer, but refused to agree that Barnhill's acceptance of the below-limits offer would preserve his right to claim UIM benefits under his GEICO policy.[4] Barnhill and State Farm did not agree on a settlement and the case went to trial, which ended in a defense verdict. Barnhill successfully moved for a new trial and thereafter settled his claim with State Farm for a total payment of $25,000.

After settling with State Farm, Barnhill filed a claim with GEICO for UIM benefits. GEICO refused to pay, contending that Barnhill was not entitled to UIM benefits because he had failed to exhaust the limits of Walters's liability coverage as required by GEICO's UIM policy. Barnhill then filed a declaratory judgment action asking for a ruling that his GEICO UIM coverage had been triggered. The superior court granted summary judgment to GEICO on the ground that Barnhill had not exhausted Walters's underlying liability policy limits. Barnhill appeals.

## III. DISCUSSION

### A. Standard of Review

■ This case presents questions of statutory construction, which we answer de novo applying our independent judgment.[5] The starting point in statutory inquiry is "the language of the statute itself construed in light of the purposes for which it was enacted."[6] We therefore aim to give effect to the legislature's intent, keeping in mind the meaning the statutory language conveys to others.[7] "[U]nless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage."[8]

■ We apply a sliding scale approach to statutory interpretation: to determine the meaning of a statute we look to its legislative history, even if its language is plain on its face.[9] But "the plainer the meaning of the

1. The insurance companies further asserted that the claims were untimely under the tort statute of limitations and policy provisions; this delay impaired their rights to subrogation. They press this point on appeal. Because we decide Curran's claim on other grounds, we need not address the statute of limitations argument here.

2. This proposed settlement totaled $62,832.15, including the policy limits of $50,000, prejudgment interest of $4,847.41, and Alaska Civil Rule 82 attorney's fees of $7,984.74.

3. State Farm offered to settle for a total of $60,746.03, which consisted of a $40,000 base payment out of Walters's available liability coverage and a $20,746.03 additional payment for prejudgment interest and attorney's fees, which would not have counted against the policy limit.

4. Although Barnhill claims that "GEICO refused to consent to a settlement for [the State Farm] amount," he cites to no evidence in the record supporting this allegation. As GEICO points out, the record shows, and Barnhill himself admits, that GEICO never refused Barnhill the right to settle his claims against the third-party tortfeasor. Rather, GEICO took the position that a settlement for less than the available liability policy limits would be insufficient to allow Barnhill to pursue a UIM claim against GEICO.

5. See Progressive Ins. Co. v. Simmons, 953 P.2d 510, 512 (Alaska 1998).

6. Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co., 746 P.2d 896, 904 (Alaska 1987).

7. See id. at 905.

8. Id. (citations omitted); see also Homer Elec. Ass'n v. Towsley, 841 P.2d 1042, 1044 (Alaska 1992).

9. See Simmons, 953 P.2d at 516.

language of the statute, the more convincing any contrary legislative history must be." [10] When a statute's meaning appears clear and unambiguous, the party urging another meaning "bears a correspondingly heavy burden of demonstrating contrary legislative intent." [11] We decline to "modify or extend a statute where the statute's language is clear and the legislative history reveals no ambiguity." [12]

### B. Background

In 1990 the legislature changed Alaska's UIM statutes from a reduction approach to an excess approach. [13] Under the reduction approach, UIM coverage protected an insured person only to the extent that the UIM limits exceeded the limits of available liability coverage. [14] This approach attempted to "put the insured in the same position he or she would have occupied had the tortfeasor's liability insurance limits been the same as the underinsured motorist coverage limits purchased by the insured." [15] It reduced an insured's amount of UIM protection by "subtracting from the UIM policy limits any amount paid or payable to the insured from other sources, including liability coverage." [16]

In contrast, under Alaska's current excess approach, "an underinsured driver is one whose liability limits are insufficient to cover the injured person's actual damages." [17] Under this approach, UIM coverage

is premised upon the idea that the injured person is entitled to recover under his or her own underinsured motorist coverage to the extent that the tortfeasor's liability insurance coverage is insufficient to compensate the injured person fully for his or her loss, subject only to the limits of the underinsured motorist coverage. [18]

Excess coverage thus strives to provide additional coverage, as needed to fully compensate injured motorists, after available liability coverage has been completely exhausted. [19]

### C. UIM Claimants Must Exhaust Liability Limits Under AS 28.20.445(e)(1) by Payments, Judgments, or Settlements.

We have not yet addressed whether Alaska's UIM statute requires a claimant to exhaust underlying liability policy limits before going forward with a UIM claim. [20] Under AS 28.20.445, UIM coverage

may not apply to bodily injury, sickness, disease, or death of an insured or damage to or destruction of property of an insured until the limits of liability of all bodily injury and property damage liability bonds and policies that apply have been used up by payments, judgments or settlements. [21]

---

**10.** Id. (citing State v. Alex, 646 P.2d 203, 208–09 n. 4 (Alaska 1982)).

**11.** University of Alaska v. Geistauts, 666 P.2d 424, 428 n. 5 (Alaska 1983); see also Homer Elec. Ass'n, 841 P.2d at 1044.

**12.** Lewis v. State, Commercial Fisheries Entry Comm'n, 892 P.2d 175, 180 (Alaska 1995) (citing Alaska Pub. Employees Ass'n v. City of Fairbanks, 753 P.2d 725, 727 (Alaska 1988)).

**13.** See Simmons, 953 P.2d at 517–18.

**14.** See id. at 517.

**15.** Id. at 517 n. 6 (quoting State Auto. Mut. Ins. Co. v. Youler, 183 W.Va. 556, 396 S.E.2d 737, 747 (1990)).

**16.** Id. at 514.

**17.** Id. at 517.

**18.** Id. at 517 n. 6 (quoting Youler, 396 S.E.2d at 748).

**19.** See id. at 517. As Don Koch, Acting Deputy Director of Alaska's Division of Insurance, told the House Judiciary Standing Committee, the change to excess coverage " 'would assure that if an individual bought $100,000 of uninsured or underinsured motorist protection, and the other party has $200,000 coverage available, the first individual's $100,000 coverage would come in after the $200,000 is utilized.' " Id. at 514 (discussing Minutes, House Judiciary Standing Committee, March 20, 1990, at 15).

**20.** However, AS 28.20.445(e)(1) has been designated as an exhaustion statute by at least one commentator. See 3 Irvin E. Schermer, Automobile Liability Insurance 3d § 59.02 n. 1 (1995 & Cum.Supp.2000).

**21.** (Emphasis added.) Both the Progressive and State Farm policies contain language that mirrors the statutory exhaustion requirement of AS 28.20.445(e)(1). Progressive's policy states that the company is not obligated to pay for damages resulting from the ownership, maintenance, or use of an underinsured motor vehicle until after the liability limits of all applicable bodily injury

This statutory language is similar to exhaustion statutes in other jurisdictions. Connecticut, for instance, has a typical exhaustion statute:

> An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements.... [22]

At least seven other states have exhaustion statutes: California, Delaware, Illinois, New Jersey, New York, North Carolina, and Oregon.[23] Additionally, Kentucky and South Dakota arguably have statutes that may be categorized as exhaustion statutes.[24]

Alaska's statute omits the verb "exhaust," substituting the phrase "used up" instead. But the meaning is equivalent. Without discussion in *Longworth v. Van Houten*,[25] a New Jersey court interpreted the following policy language as an exhaustion clause: "We won't have to make any payments under this coverage until all the bonds and insurance policies which apply to the injury and/or property damage have been *used up* in paying court judgments or settlements."[26] According to Webster's Third New International Dictionary, the word "exhaust" means: "to

*use up* the whole supply or store of: expend or consume entirely."[27] Thus, "use up" and "exhaust" are interchangeable; indeed, they define each other. Curran and Barnhill offer no legislative history indicating that the clear language of AS 28.20.445(e)(1) was intended to require something less than exhaustion of the underlying liability policy limits. And the goals of Alaska's excess coverage approach are not inconsistent with an exhaustion requirement. As the history of Alaska's current UIM statutes makes clear, the legislature intended available liability coverage to be used up before UIM insurance would come into effect.[28]

■ We thus read AS 28.20.445(e)(1) to be an exhaustion statute. As such, it requires a UIM claimant to "exhaust" or "use up" all underlying liability coverage before recovering under a UIM policy.

■ Curran and Barnhill separately argue that an exhaustion requirement violates public policy. Our ruling that AS 28.20.445(e)(1) requires exhaustion all but disposes of this public policy argument, since public policy can guide statutory construction but cannot override a clear and unequivocal statutory requirement.[29]

Courts in jurisdictions without exhaustion statutes disagree about whether public policy allows enforcement of exhaustion clauses in

and property damage liability bonds or policies "have been exhausted by payment of judgments or settlements." Similarly, State Farm's policy provides that, if an underinsured motorist causes damages, no coverage applies "until the limits of liability of all bodily injury and property damage liability bonds and policies that apply have been used up by payment of judgments or settlements."

GEICO, however, appears to rely solely on the statutory exhaustion requirement in AS 28.20.445; we could not find, and GEICO does not point to, any policy language expressly stating the exhaustion requirement.

22. Conn. Gen.Stat. Ann. § 38a–336(b) (2000).

23. *See* Cal. Ins.Code § 11580.2(p)(3) (West Supp. 2001); Del.Code Ann. tit. 18, § 3902(b)(3) (2000); 215 Ill. Comp. Stat. Ann. 5/143a 2(7) (West 2000); N.J. Stat. Ann. § 17:28.1 1(e) (West 1994 & Supp.2000); N.Y. Ins. Law § 3420(f)(A)(2) (McKinney 2000); N.C. Gen.Stat. § 20–279.21(b)(4) (1999); Or.Rev.Stat. § 742.504(4)(d) (1999).

24. *See* 3 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* 2d § 44.2 n. 2 (1995); *see also* Ky.Rev.Stat. Ann. § 304.39–320 (Lexis Supp.2000); S.D. Codified Laws § 58–11–9.5 (Lexis 2000).

25. 223 N.J.Super. 174, 538 A.2d 414 (App.Div. 1988).

26. *Id.* at 418 (emphasis added).

27. *Webster's Third New International Dictionary* 796 (1966) (emphasis added).

28. *See supra* note 19; *see also Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 519 (Alaska 1998).

29. *See, e.g., Farmers Ins. Exch. v. Hurley*, 76 Cal.App.4th 797, 90 Cal.Rptr.2d 697, 701 (1999) (statutes may be invalidated only on constitutional grounds, since they reflect the public policy of the state).

UIM policies. Most refuse to enforce such insurance policy clauses on public policy grounds.[30] But in jurisdictions that have exhaustion statutes, courts almost universally uphold these statutes and require UIM claimants to exhaust available liability coverage before pursuing UIM claims.[31] Indeed, only one court in a jurisdiction with a statute similar to Alaska's, a New Jersey superior court, has ruled that the exhaustion statute contravenes public policy.[32] Because we find the decisions upholding exhaustion statutes to be persuasive, we decline to invalidate AS 28.20.445(e)(1) as violative of public policy. Therefore, we construe AS 28.20.445(e)(1) to require UIM claimants to "use up" the underlying policy limits by "payments, judgments or settlements" before proceeding with UIM claims.

### D. Curran and Barnhill Failed To "Use Up" Liability Coverage.

Before Curran and Barnhill could proceed with their UIM claims, they were required to exhaust the underlying liability policy limits. Curran failed to obtain any "payments, judg-

---

**30.** See, e.g., Country Mut. Ins. Co. v. Fonk, 198 Ariz. 167, 7 P.3d 973, 977 (App.2000) ("The injured insured may recover UIM benefits when the total damages sustained exceed the limits of the tortfeasor's liability policy even when the insured has settled with the tortfeasor for less than the liability limits."); State Farm Mut. Auto. Ins. Co. v. Bencomo, 873 P.2d 47, 49 (Colo.App. 1994) (construing the UIM policy language "used up by payments of judgments or settlements" to allow the injured insured "to claim [UIM] benefits for the difference between the tortfeasor's policy limits and his [UIM] policy limits"); Taylor v. Government Employees Ins. Co., 90 Hawai'i 302, 978 P.2d 740, 750 (1999) (holding exhaustion clauses to be void as against Hawaii's public policy); In re Estate of Rucker, 442 N.W.2d 113, 116–17 (Iowa 1989) (declining to enforce a UIM exhaustion requirement which conditioned coverage on the injured insured's actual receipt of the full liability limits); Brown v. USAA Cas. Ins. Co., 17 Kan.App.2d 547, 840 P.2d 1203, 1205 (1992) (holding exhaustion requirement void and unenforceable because not included in a statutory list of permissible exclusions); Schmidt v. Clothier, 338 N.W.2d 256, 261 (Minn.1983) ("hold[ing] that exhaustion clauses are void as against the policies of the no-fault act" and that settlement with an underinsured tortfeasor for less than policy limits, along with a release of the tortfeasor, does not preclude recovery of UIM benefits); Augustine v. Simonson, 283 Mont. 259, 940 P.2d 116, 120 (1997) (deciding that provisions requiring exhaustion of underlying policy limits as a prerequisite to securing indemnification from UIM insurers are void as contrary to public policy); Shaw v. Continental Ins. Co., 108 Nev. 928, 840 P.2d 592, 594 (1992) (noting that underinsured endorsement carriers usually will not be prejudiced if they receive a credit for the full limits of the tortfeasor's liability policy); Mann v. Farmers Ins. Exch., 108 Nev. 648, 836 P.2d 620, 621 (1992) (noting that insureds may have valid reasons for accepting a less-than-limits settlement and requiring them to exhaust policy limits would increase litigation costs and promote delay); Hamilton v. Farmers Ins. Co. of Wash., 107 Wash.2d 721, 733 P.2d 213, 216 (1987) (en banc) (explaining that "[t]he injured insured is entitled to compensation from his underinsurer without regard to ... whether ... recovery exhausts any coverage provided by the liability insurers of the tortfeasor").

However, a significant minority of courts without statutory authority strictly uphold exhaustion clauses in UIM contracts, generally relying on freedom of contract principles. See, e.g., Robinette v. American Liberty Ins. Co., 720 F.Supp. 577, 578, 580 (S.D.Miss.1989) (determining that injured insured's acceptance of $32,500 in a settlement did not exhaust the $50,000 liability policy as required by clear language in the UIM policy and finding no statutory authority for a credit scheme), aff'd, 896 F.2d 552 (5th Cir. 1990); Birchfield v. Nationwide Ins., 317 Ark. 38, 875 S.W.2d 502, 503–04 (1994) (holding that the plain meaning of the UIM policy language was clear and not contrary to public policy); Lewis v. State Farm Mut. Auto. Ins. Co., 857 S.W.2d 465, 467–68 (Mo.App.1993) (enforcing UIM policy exhaustion clauses as written); Ploen v. Union Ins. Co., 253 Neb. 867, 573 N.W.2d 436, 443 (1998) (holding that insurance companies may limit their own liability through freedom of contract; although exhaustion clauses may encourage parties to litigate rather than settle, such decisions were better left to the legislature); Castle v. Williamson, 192 W.Va. 641, 453 S.E.2d 624, 630 (1994) (UIM policies containing "clear and unambiguous language which requires exhaustion of applicable liability coverage" are enforceable); Danbeck v. American Family Mut. Ins. Co., 232 Wis.2d 417, 605 N.W.2d 925 (App.1999) (rejecting the idea that a credit was equivalent to exhausting policy limits and concluding that exhausting the limits means "entirely using up the limits"), review granted, 234 Wis.2d 175, 612 N.W.2d 732 (2000).

**31.** See Hurley, 90 Cal.Rptr.2d at 701, 703; Continental Ins. Co. v. Cebe–Habersky, 214 Conn. 209, 571 A.2d 104, 106 (1990); Lemna v. United Servs. Auto. Ass'n, 273 Ill.App.3d 90, 209 Ill.Dec. 942, 652 N.E.2d 482, 484 (1995); In re Fed. Ins. Co. v. Watnick, 80 N.Y.2d 539, 592 N.Y.S.2d 624, 607 N.E.2d 771, 774 (1992).

**32.** Longworth v. Van Houten, 223 N.J.Super. 174, 538 A.2d 414, 423–24 (App.Div.1988).

ments or settlements" from her husband's liability insurer. Indeed, Curran refused to even make a claim again Progressive and only made claims under her husband's and her own UIM policies. Consequently, Curran did not exhaust the liability policy limits.

■ Barnhill, on the other hand, settled with the liability insurer for less than policy limits. Thus, the question in his case becomes whether settling a claim for less than policy limits amounts to exhaustion. We hold that it does not. As we have already discussed, AS 28.20.445(e)(1) requires liability coverage to be "used up" by "payments, judgments or settlements"; it does not provide that a claimant may exhaust underlying liability limits by crediting the UIM insurer. Even assuming that a sub-policy-limits settlement might be deemed to "use up" available coverage in some situations,[33] Barnhill has failed to show any exceptional circumstances that could justify a finding of constructive exhaustion in this case.

Barnhill declined to settle with State Farm, the liability insurer, for a sum approaching policy limits. He then opted to take the case to trial. After losing at trial but winning a motion for a new trial, he decided to settle with State Farm for a sum considerably below policy limits.[34] Since Barnhill did not use up liability coverage by payments, judgments, or settlements and has shown no good reason to be excused from complying with the exhaustion requirement, he is precluded from pursuing a UIM claim.

E. *A Credit Is Not a Payment or Judgment as Contemplated by AS 28.20.445(e)(1).*

■ Curran and Barnhill nevertheless argue that a unilaterally offered credit should always suffice as a settlement or judgment under AS 28.20.445(e)(1). Although they recognize that "no credit could ever be given without there first being a 'settlement' for less than the third-party limits," they assert that, once the third-party settlement occurs, the injured insured and UIM carrier must negotiate or "settle" to determine the actual value of the remaining liability policy limits, which can then be credited against the UIM coverage.[35] Curran and Barnhill thus urge us to define the term "settlement" broadly for AS 28.20.445(e)(1) purposes, so that it includes a mandatory negotiation between the insured and the UIM insurer that determines the amount of a credit that the insured will be entitled to unilaterally impose on the UIM carrier.

This argument stretches the statute's plain meaning too far. Alaska Statute 28.20.445(e)(1) requires the liability limits to be "used up by payments, judgments or settlements." In context, the word "settlement" plainly refers to the disposition of the injured party's claim against the tortfeasor and the liability insurer—not a second-tier agreement between the injured insured and the UIM insurer. If Curran and Barnhill's position were adopted, any UIM claim would necessarily include a "settlement" for exhaustion purposes, because the insured and the UIM insurer must always determine the underlying policy limits. But a UIM claimant cannot unilaterally invoke a credit and realistically call it a settlement.[36] To hold otherwise would allow a UIM claimant like Curran to bypass the liability insurer altogether and effectively use UIM coverage as primary insurance. That would be contrary to the design of UIM insurance: providing

**33.** For example, a difficult question might have presented itself here had GEICO initially refused to approve a policy-limits settlement. Barnhill asserts that GEICO did just that. But the record establishes that GEICO actually did something quite different: it simply refused to waive its right to claim lack of exhaustion if Barnhill agreed to a sub-policy-limits settlement. It was State Farm that refused Barnhill's policy-limits settlement offer.

**34.** Barnhill was granted a new trial but decided not to go forward with another trial due to the expense of litigation.

**35.** Curran and Barnhill concede that their credit offer must include the facial policy limits plus applicable add-ons.

**36.** Curran and Barnhill suggest that if the claimant and UIM carrier cannot agree or "settle" on the amount of the credit, or the facial policy limits and "add-ons," then the parties may proceed to litigation. Upon resolution, the parties would then have a final judgment for exhaustion purposes. This rationale invites litigation.

UIM insureds with excess coverage for low premiums [37] because primary insurers have already conducted the investigation, negotiation, and defense of all claims.[38]

Barnhill and Curran have cited no cases that considered a "settlement" for exhaustion purposes to mean a calculation of leftover liability limits that the insured can unilaterally invoke as a means for triggering UIM coverage in cases of sub-policy-limits third-party settlements. And courts in jurisdictions with an exhaustion statute have overwhelmingly determined that a credit does not suffice to exhaust liability limits.

In *Continental Insurance Co. v. Cebe-Habersky*,[39] the Connecticut Supreme Court rejected the notion that providing the UIM insurer with a credit satisfied the statutory exhaustion requirement. Cebe-Habersky, a passenger injured in a single-car automobile accident, settled with the driver's insurer for $17,000 of the $20,000 liability policy limits.[40] Cebe Habersky then demanded arbitration against his own UIM carrier, Continental Insurance Company.[41] The arbitration panel ordered Continental to pay $40,000, the amount of damages that it found Cebe Habersky had suffered in excess of the $20,000 liability policy limit, but the trial court vacated the panel's award.[42]

On appeal, Cebe-Habersky argued that providing a credit for the tortfeasor's policy limit was equivalent to exhausting the liability policy.[43] But the Connecticut Supreme Court rejected this argument. Noting that the applicable Connecticut statute required a UIM claimant to exhaust liability limits by receiving actual "payment of judgments or settlements,"[44] the court concluded that partial use of the available policy limits coupled with a credit for the remainder, did not amount to exhaustion by actual payment.[45]

Similarly, in *In re Federal Insurance Co. v. Watnick*, the Court of Appeals of New York enforced a clear statutory mandate and policy language by requiring the Watnicks to " 'exhaust ... by payment' the limits of all applicable bodily injury insurance policies before Federal [was] required to pay pursuant to the underinsurance endorsement."[46] Because the Watnicks had received far less in actual payment than the $20,000 liability policy limits, the court held that they had not "exhausted by payment" the underlying liability limits as required by statute.[47]

Based on similar statutory language, an Illinois court upheld an exhaustion clause in *Lemna v. United Services Automobile Ass'n*.[48] A prior Illinois decision had found Illinois statutes ambiguous in dealing with

---

37. *Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 512 (Alaska 1998).

38. *See Safety Nat'l Cas. Corp. v. Pacific Employers Ins. Co.*, 927 P.2d 748, 751 (Alaska 1996).

39. 214 Conn. 209, 571 A.2d 104 (1990).

40. *See id.* at 105.

41. *See id.*

42. *See id.*

43. *See id.*

44. *Id.* at 106; Conn. Gen.Stat. § 38-175c(b)(1) (1990).

45. *See Cebe-Habersky*, 571 A.2d at 106; *see also Ciarelli v. Commercial Union Ins. Co.*, 234 Conn. 807, 663 A.2d 377 (1995) (applying *Cebe-Habersky* to conclude that passenger injured in single-vehicle accident must exhaust all applicable underlying liability policies, including policies of both owner and vehicle operator before proceeding on UIM claim).

We note, however, that unlike the exhaustion statutes of Connecticut and many other states, AS 28.20.445(e)(1) does not expressly require payment in order to exhaust underlying liability limits. As previously noted, the Connecticut exhaustion statute expressly requires that the liability limits be "exhausted by payment *of* judgments or settlements." *See Cebe-Habersky*, 571 A.2d at 106 (emphasis added). By contrast, AS 28.20.445(e)(1) requires liability limits to be "used up by payments, judgments *or* settlements" (emphasis added). Given the facts of the case before us, this difference is inconsequential and need not be considered, since neither Curran nor Barnhill used up available liability coverage by "payment" or "judgment" or "settlement."

46. 80 N.Y.2d 539, 592 N.Y.S.2d 624, 607 N.E.2d 771, 774 (1992).

47. *See id.*

48. 273 Ill.App.3d 90, 209 Ill.Dec. 942, 652 N.E.2d 482 (1995).

exhaustion clauses, and had found such clauses invalid on public policy grounds in the absence of clear statutory authorization.[49] The Illinois legislature responded by enacting an unambiguous statute authorizing insurance carriers to condition UIM benefits on the satisfaction of exhaustion clauses.[50] Construing this provision, the *Lemna* court held that an insured cannot require an insurer to arbitrate a UIM claim without first exhausting the tortfeasor's insurance policy.[51]

Likewise, in *Farmers Insurance Exchange v. Hurley*,[52] the California Court of Appeal upheld an exhaustion clause in a UIM policy that was consistent with California statutory language.[53] Hurley sustained damages in an automobile accident caused by a driver who was driving a rental car from Dollar Rent–a–Car.[54] Hurley was covered by a UIM policy issued by Farmers Insurance that did not apply until a claimant exhausted underlying liability policy limits.[55] Since the other driver had neither assets nor insurance, Dollar and Hurley stipulated to a judgment of $15,000, the limit of Dollar's liability coverage.[56] According to the terms of the settlement, Dollar could fully satisfy the judgment by paying Hurley $5,000 within two months.[57] After Dollar paid Hurley $5,000, Hurley claimed UIM benefits from Farmers, which denied the claim because Hurley had not satisfied the UIM policy's exhaustion clause.[58]

Under California Insurance Code § 115801.2(p)(3), UIM coverage "does not apply to any bodily injury until the limits of bodily injury liability policies [covering the underinsured] vehicles causing the injury have been exhausted by payment of judgment or settlements...."[59] The *Hurley* court observed that while contract provisions may be void as against public policy, statutes reflect the public policy of the state; thus, they may only be invalidated on constitutional grounds.[60] Though the *Hurley* court recognized that strictly enforcing exhaustion clauses might force the insured "to pursue expensive litigation for only a minimal benefit, as where the underinsured's carrier offers close to its limits," it nonetheless concluded that the statute, which was constitutional and unambiguous, "require[d] actual payment of the underinsured's full policy limits" before Hurley could invoke UIM benefits.[61]

The only contrary case that we have found is *Longworth v. Van Houten*.[62] But there, the exhaustion question was not directly before the court.[63] The court addressed it because it was intertwined with the subrogation question that was actually presented.[64]

---

49. *See id.* 209 Ill.Dec. 942, 652 N.E.2d at 484 (citing *Mulholland v. State Farm Mut. Auto. Ins. Co.*, 171 Ill.App.3d 600, 122 Ill.Dec. 657, 527 N.E.2d 29 (1988)).

50. *See id.* (citing 215 Ill. Comp. Stat. 5/143a–2(7) (West 1992)).

51. *See id.* The current Illinois statute also provides that insurance carriers may condition UIM coverage on partial exhaustion of the underlying limits:

A policy which provides underinsured motor vehicle coverage may include a clause which denies payment until the limits of liability or portion thereof under all bodily injury liability insurance policies applicable to the underinsured motor vehicle and its operators have been partially or fully exhausted by payment of judgment or settlement.

215 Ill. Comp. Stat. Ann. 5/143a–2(7) (West 2000).

52. 76 Cal.App.4th 797, 90 Cal.Rptr.2d 697 (1999).

53. *See id.* at 701–04.

54. *See id.* at 699.

55. *See id.*

56. *See id.*

57. *See id.*

58. *See id.*

59. *Id.* at 699.

60. *See id.* at 701.

61. *Id.* at 704.

62. 223 N.J.Super. 174, 538 A.2d 414 (App.Div. 1988).

63. *See id.* at 423.

64. *See id.* The applicable New Jersey statute reads, in relevant part: "A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at

And in finding New Jersey's exhaustion provision contrary to public policy, the *Longworth* court emphasized that the provision appeared only under the definitional section of the New Jersey UIM statute.[65]

In sum, almost all jurisdictions with statutory exhaustion provisions uphold those requirements and condition UIM coverage on the claimant exhausting underlying liability coverage. We are persuaded by these cases and conclude that a unilateral credit of policy limits does not meet AS 28.20.445(e)(1)'s requirement of exhaustion by "payments, judgments or settlements."

## IV. CONCLUSION

Alaska Statute 28.20.445(e)(1) is an exhaustion statute and does not contravene public policy. Since neither Curran nor Barnhill exhausted the underlying liability policy limits, we AFFIRM the superior court's judgment.

---

the time of the accident have been exhausted by payment of settlements or judgments." N.J. Stat. Ann. § 17:28.1–1(e) (West 1994 & Supp. 2000).

**65.** *See* 538 A.2d at 423.