BARBERA, J.
Maryland Code (1997), § 19-509(g) of the Insurance Article establishes the limit of liability of a carrier of uninsured/underinsured (“UM”) benefits. That section authorizes a UM carrier to require that an insured “exhaust” the liability limits of a tortfeasor’s insurance policy before applying for and receiving underinsured motorist (“UM”) benefits under the insured’s policy. We are asked in this case to decide what is meant by the term “exhaust.” For the reasons that follow, we hold that the exhaustion requirement in § 19—509(g) means that an insured must have been paid the full amount of the tortfeasor’s limit of liability in order to seek UM benefits; payment of anything less than the full amount of that limit entitles the insured’s UM carrier to deny the insured’s claim for additional benefits.
FACTS AND LEGAL PROCEEDINGS
The background facts of this case are undisputed. It stems from a two-car accident that occurred on February 12, 1998, on Route 1 near Chadds Ford Township in Delaware County, Pennsylvania. A vehicle driven by Edgar Leroy Lewis, Jr., a Pennsylvania motorist, struck the rear of a vehicle driven by Mark Kurtz and owned by appellants, Mark and Theresa Kurtz (“the Kurtzes”). Mr. Kurtz sustained bodily injuries in the accident.
The vehicle driven by Mr. Lewis was insured by Allstate Indemnity Company under a $25,000.00 single limit liability policy (“the Allstate policy”). The Kurtzes’ vehicle was insured by appellee, Erie Insurance Company (“Erie”), under a policy with $100,000.00 per person and $300,000.00 per occurrence limits for both liability coverage and UM coverage (“the policy”). The Kurtzes were the named insureds under the Erie policy.
One month after the accident, appellant Mark Kurtz made a claim for benefits against Erie. Four months later, the Kurtzes informed Erie by letter that there might exist “a possible underinsured motorist claim in light of Mr. [KurtzJ’s serious injuries and economic losses.” Erie eventually ac *146 knowledged receipt of this letter and, by return letter, requested that the Kurtzes inform Erie of the status of their underlying claim against Allstate.
In January 2001, the Kurtzes, by counsel, sent a letter to Erie confirming a conversation that counsel had with a claim adjuster for Erie. The letter includes a reference to Erie’s having orally waived its rights to subrogation, and allowing the Kurtzes to sign a general release “in the event we are able to settle with Allstate Insurance Company.” The letter also explained the extent of Mr. Kurtz’s injuries and made a demand, “without prejudice,” of $100,000.00.
The Kurtzes thereafter negotiated a settlement with Allstate. Allstate agreed to pay the Kurtzes $23,500.00 in exchange for a release of all liability against the alleged tortfeasors (Laurie and Edgar Lewis and Edgar Leroy Lewis, Jr.).
The Kurtzes sent photocopies of the signed release and of the $23,500.00 check to Erie. Four months later, Erie declined by letter to pay the Kurtzes UM benefits, explaining that it did “not feel the value of [Mr. Kurtz’s] case exceeds the limit of $25,000.00, which is the policy limit coverage with the underlying carrier, Allstate Insurance Company.”
This led the Kurtzes to file a two-count complaint in the Circuit Court for Harford County, alleging that Erie had breached the UM coverage provision of its policy (Count I), and that Erie interfered with the Kurtzes’ marital relationship (Count II). They sought $125,000.00 in damages.
Erie answered, setting forth several affirmative defenses. Erie also filed a motion for summary judgment, arguing that the Kurtzes were not entitled to UM benefits because the Allstate policy had not been exhausted by payment of its limits, and Erie did not give written consent to the Kurtzes to settle their claim against Allstate.
The Kurtzes filed an opposition and the matter came on for a hearing. Following the hearing, the court issued an opinion and order granting summary judgment in favor of Erie.[1] The *147 court concluded that “Erie Insurance Company[ ] has no obligation to pay the [Kurtzes] under either the terms of the policy of insurance issued to [them] or under the law of the [S]tate of Maryland because the [Kurtzes] failed to live up to the terms of the policy by not exhausting all other insurance coverage.” The court did not rule on the effect, if any, of the Kurtzes’ decision to settle with Allstate without receiving written consent from Erie.
This appeal followed.
DISCUSSION
I.
Because this case is before us by way of a grant of summary judgment, we review the judgment de novo. Tyma v. Montgomery County, 369 Md. 497, 504, 801 A.2d 148 (2002). Summary judgment is only appropriate when, upon review of the facts and inferences therefrom in the light most favorable to the non-moving party, there is no genuine issue of material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law. Md. Rule 2-501(e); Sadler v. Dimensions Healthcare Corp., 378 Md. 509, 515, 836 A.2d 655 (2003). Inasmuch as there is no dispute of material fact, the only issue is whether the court was legally correct in deciding that the Kurtzes were not entitled to UM benefits under the Erie policy.
II.
Since 1973, Maryland “has required every motor vehicle insurance carrier to offer certain minimum uninsured motorist coverage in every motor vehicle insurance policy issued” in this State. Waters v. United States Fidelity & Guar. Co., 328 Md. 700, 710, 616 A.2d 884 (1992). Found at § 19-501 et seq. of the Insurance Article, the legislative scheme has the pur *148 pose of “ ‘assuring] financial compensation to the innocent victims of motor vehicle accidents who are unable to recover from financially irresponsible uninsured motorists.’ ” Crespo v. Topi 154 Md.App. 391, 394, 840 A.2d 156 (2003) (citation omitted).
The legislative scheme, however, also authorizes UM carriers to impose certain exclusions, conditions, and limits on the required UM coverage. Lewis v. Allstate Ins. Co., 368 Md. 44, 48-49, 792 A.2d 272 (2002). One such authorized limit on UM coverage is set forth in § 19-509(g), which provides:
Limit of insurer’s liability.—The limit of liability for an insurer that provides uninsured motorist coverage under this section is the amount of that coverage less the amount paid to the insured, that exhausts any applicable liability insurance policies, bonds, and securities, on behalf of any person that may be held liable for the bodily injuries or death of the insured.
In this case, Erie denied the Kurtzes’ claim for UM benefits by invoking the policy’s provision that addressed the limit of Erie’s UM liability. That provision declares, in part:
When the accident involves underinsured motor vehicles, we will not pay until all other forms of insurance under all bodily injury and property damage liability bonds and insurance policies and self-insurance plans applicable at the time of the accident have been exhausted by payment of their limits.
(Emphasis added.)
Erie submits that this provision is consistent with § 19-509(g) and permitted Erie to deny the Kurtzes’ claim because they had not exhausted the tortfeasor’s liability policy. We agree with Erie that this provision essentially mirrors the language of § 19-509(g), and the Kurtzes do not argue to the contrary. Neither do the Kurtzes suggest that the term “exhaust” has any different meaning in the policy than it does in the statute.
*149 The parties’ dispute focuses instead on the proper construction of the term “exhaust,” as it is employed in the statute (and therefore the policy). Erie asserts that the term should be given its ordinary dictionary meaning and, thus defined, required the Kurtzes to have been paid the $25,000.00 maximum coverage of the tortfeasor’s policy. Because they settled for $23,500.00, they failed to exhaust the policy limits.
The Kurtzes urge a definition of exhaustion that is more favorable to them and is, in their view, more in keeping with the purpose of Maryland’s comprehensive scheme of regulating uninsured/underinsured motorist coverage. They argue that exhaustion must be construed simply as a “threshold” to UM coverage, so that any payment received by the injured party on the underlying liability policy, even if less than its limits, would satisfy the exhaustion requirement. This construction would permit recovery under the injured party’s UM coverage, the Kurtzes argue, so long as a credit is given to the UM carrier for the difference between the amount received under the underlying liability policy and the limit of its coverage.
Unfortunately for the Kurtzes, Erie has the better part of the argument. As we discuss below, giving the word “exhaust” its plain and ordinary meaning, and reading that word in the context in which it is employed in § 19-509(g), the statute unambiguously requires the injured party to be paid the full amount available under the tortfeasor’s liability policy. This construction, moreover, is consistent with how exhaustion is understood in insurance parlance; is confirmed by resort to the legislative history of § 19—509(g); and conforms to the construction given the word “exhaust,” or other similar terms, in states having similar exhaustion statutes. Finally, our reading of § 19-509(g) does not conflict with the overarching purpose of Maryland’s scheme to provide UM coverage.
III.
Our analysis calls for us to employ principles of statutory construction, the most fundamental of which is to *150 ascertain and give effect to the legislative intention. Western Corr. Inst. v. Geiger, 371 Md. 125, 140, 807 A.2d 32 (2002). The starting point is the language of the statute itself. Id. at 141, 807 A.2d 32. “In fact, all statutory interpretation begins, and usually ends, with the statutory text itself, for the legislative intent of a statute primarily reveals itself through the statute’s very words.” Price v. State, 378 Md. 378, 387, 835 A.2d 1221 (2003) (internal citations omitted). And we are cautioned not to “add [ ]or delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute,” nor may we “construe the statute with forced or subtle interpretations that limit or extend its application.” Id. “[I]f the words of a statute clearly and unambiguously delineate the legislative intent, ours is an ephemeral enterprise. We need investigate no further but simply apply the statute as it reads.” Id.
Neither the word “exhaust,” nor the statute in which it is used, is ambiguous. “Exhaust” is defined as “to use up the whole supply or store of: expend or consume entirely.” Webster’s Third New International Dictionary 796 (2002). Giving the word exhaust its ordinary meaning and reading it in context, the intent of § 19-509(g) is plain: it requires that the insured must have been paid the entire amount of the tortfeasor’s liability policy to be entitled to additional benefits under the insured’s UM policy.
Moreover, this construction of § 19-509(g) comports with how the concept of exhaustion is understood in insurance law. In insurance parlance, exhaustion contemplates the complete use of a primary liability policy before resort to any secondary or excess policy. As this Court has declared, “[wjithin the meaning of an excess policy, ‘exhaustion’ does not occur until the limits of underlying insurance have been met.” Mayor & City Council of Baltimore v. Utica Mut. Ins. Co., 145 Md.App. 256, 314, 802 A.2d 1070, cert. granted, 371 Md. 613, 810 A.2d 961 (2002), dismissed, 374 Md. 81, 821 A.2d 369 (2003).
We conclude that § 19-509(g) unambiguously states that, in order to be entitled to UM benefits, the insured must use up, *151 or consume entirely, the coverage provided by the tortfeasor’s liability policy; if the insured does not do so, § 19-509(g) authorizes the UM carrier to deny payment. Furthermore, as we discuss next, this construction of § 19-509(g) is confirmed by its legislative history. See Mayor & City Council of Baltimore v. Chase, 360 Md. 121, 131, 756 A.2d 987 (2000) (stating that, even where a statute is unambiguous, the construing court may look to the statute’s legislative history as a “confirmatory process”).
IV.
Section 19-509(g) has undergone two iterations since its enactment in 1973. Originally, the limit of liability of a UM insurer was codified at Maryland Code Ann. (1957, 1994 Repl.Vol.), Art. 48A, § 541(c)(3). That statute provided:
Limit of insurer’s liability.—The limit of liability for an insurer providing uninsured motorist coverage under this subsection is the amount of that coverage less the sum of the limits under the liability insurance policies, bonds, and securities applicable to the bodily injury or death of the insured.
This statute “provided for a strict limit-to-limit comparison [of the policies’ coverage], without regard to the amount that the injured party actually receives from the tortfeasor’s insurance carrier.” General Accident Ins. Co. v. Scott, 107 Md. App. 603, 622-23, 669 A.2d 773, cert. denied, 342 Md. 115, 673 A.2d 707 (1996); accord Fireman’s Fund. Ins. Co. v. Bragg, 76 Md.App. 709, 715-16, 548 A.2d 151 (1988); see also Nationwide Mut. Ins. Co. v. Wendler, 796 F.Supp. 201, 204 (D.Md. 1992) (following our decision in Bragg to conclude that “[b]oth the policy and the statute are straightforward and by their terms only require a comparison of the applicable coverage limits to determine if a motorist is underinsured”).
Apparently because § 541(c)(3) led to harsh consequences for some victims of underinsured motorists, Senate Bill (“SB”) 251 was introduced in the 1995 session of the General Assem *152 bly. 1995 Md. Laws ch. 515. As summarized, SB 251 provided
that a person with uninsured motorist insurance may recover the amount of the person’s injuries up to the limit of the person’s uninsured motorist coverage. The injured person first would recover from the injuring party’s liability insurer before recovering from the injured person’s uninsured motorist insurer.
Floor Report of Senate Bill 251, at 1; see also Bill Analysis of Senate Bill 251, at 1. In effect, SB 251 altered
the limit of liability of an uninsured motorist insurer to account for situations in which the limit of the injuring party’s liability policy has been reduced, by payment of other claims arising from the same occurrence, to an amount less than the coverage under the injured person’s uninsured motorist coverage.
Floor Report of Senate Bill 251, at 1; see also Bill Analysis of Senate Bill 251, at 1.
As originally introduced, SB 251 read:
The limit of liability for an insurer providing uninsured motorist coverage under this subsection is the amount of that coverage less the [sum of the limits] AMOUNT PAID TO THE INSURED under [the] ANY APPLICABLE liability insurance policies, bonds, and securities ON BEHALF OF ANY PERSON WHO MAY BE HELD LIABLE FOR [applicable to] the bodily [injury] INJURIES or death of the insured.
Important to our analysis in the present case, the bill was subsequently amended to include the requirement that the insured exhaust the limits of the tortfeasor’s insurance. As amended, the bill read:
The limit of liability for an insurer providing uninsured motorist coverage under this subsection is the amount of that coverage less the [sum of the limits] AMOUNT PAID TO THE INSURED under THAT EXHAUSTS [the] ANY APPLICABLE liability insurance policies, bonds, and securities, ON BEHALF OF ANY PERSON WHO MAY BE *153 HELD LIABLE FOR [applicable to] the bodily [injury] INJURIES or death of the insured.
This amended version was enacted into law. The bill file contains no evidence of the legislature’s purpose in adding the exhaustion requirement to current § 19-509(g). Nevertheless, it is obvious that the legislature rejected an approach that would permit, in essence, partial exhaustion in favor of a statute that requires total exhaustion of the underlying liability policy.
The legislative history of § 19-509(g) thus refutes the Kurtzes’ argument that the exhaustion requirement should be construed merely as a “threshold” to the insured’s obtaining benefits under the UM policy. As we have outlined, SB 251, in its original form, may well have permitted the construction the Kurtzes seek to impose upon the statute as enacted. But that version of SB 251 did not pass.
We will not ignore the plain language of the statute, nor its legislative history in ascertaining the legislative purpose behind § 19-509(g). See State Farm Auto. Ins. Co. v. Insurance Comm’r of the State of Maryland, 283 Md. 663, 672, 392 A.2d 1114 (1978) (rejecting Insurance Commissioner’s proposed definition of word “recover” in insurance benefits statute because employing that definition “would be ignoring the plain language of the statute and ‘resorting to subtle or forced interpretations for the purpose of ... limiting ... its operation’ ”) (citation omitted).
V.
Cases from our sister states having exhaustion statutes like Maryland’s have consistently construed their exhaustion provisions as we have done here. Illustrative is Curran v. Progressive Northwestern, Ins. Co., 29 P.3d 829 (Alaska 2001).
In that case, the Supreme Court of Alaska held that its statute requiring a UM insured to “use up” all underlying liability coverage before recovering under a UM policy is an “exhaustion statute” and, like other such provisions around the country, authorizes a UM insurer to make UM coverage *154 inapplicable until the liability coverage has been used up. See id. at 833, 833 n. 23 (citing statutes), id at. 834 n. 31 (citing cases). The court rejected the argument of the insured that a unilateral credit of liability coverage does not satisfy the statutory requirement to use up the liability coverage by payments, judgments or settlements before an insured may collect UM benefits. Id. at 835-36. And the court rejected the argument advanced by the insured that such a construction is inconsistent with public policy, “since public policy can guide statutory construction but cannot override a clear and unequivocal statutory requirement.” Id. at 833.
Other cases are to like effect. See Farmers Ins. Exch. v. Hurley, 76 Cal.App.4th 797, 806, 90 Cal.Rptr.2d 697, 703 (1999) (statute required that full limits of tortfeasor’s policy be exhausted, and that settlement for lesser amount did not satisfy requirements for UM benefits, even if insured agreed to credit UM insurer with difference between settlement amount and tortfeasor’s liability limits), review denied, February 16, 2000; The Continental Ins. Co. v. Cebe-Habersky, 214 Conn. 209, 213, 571 A.2d 104, 106 (1990) (under statute obligating an insurer to pay uninsured motorist benefits only after limits of applicable liability policies have been “exhausted by payment of judgments or settlements,” insurer was not required to pay UM benefits to insured who settled for less than full limits of tortfeasor’s policy); Lemna v. United Servs. Auto. Ass’n, 273 Ill.App.3d 90, 92-93, 209 Ill.Dec. 942, 652 N.E.2d 482, 484 (1995) (statute allowing automobile insurance policy to contain pre-exhaustion clause denying payment of UM benefits until liability limits have been exhausted permits delay of arbitration over UM payments until liability limits are exhausted by judgment or settlement; prior to exhaustion, insured cannot require insurer to arbitrate claim for UM benefits); In the Matter of Fed. Ins. Co. v. Watnick, 80 N.Y.2d 539, 546, 592 N.Y.S.2d 624, 607 N.E.2d 771, 774 (1992) (statutory scheme requires primary insurers to “pay every last dollar,” and insureds “to accept no less, prior to the initiation of an underinsurance claim”).
*155 The Kurtzes do not acknowledge this line of cases, and urge instead that we follow Boyle v. Erie Ins. Co., 441 Pa.Super. 103, 656 A.2d 941, appeal denied, 542 Pa. 655, 668 A.2d 1120 (1995), and like cases, which declare void on public policy or other grounds policy provisions that require exhaustion of the tortfeasor’s liability limits. See, e.g., id. at 109, 656 A.2d at 943-44; Karasawa v. TIG Ins. Co., 88 Hawai’i 77, 83-84, 961 P.2d 1171, 1177-78 (1998) (court stated that under motor vehicle insurance statutory scheme, no requirement existed that an injured party exhaust the liability policies of all joint tortfeasors before making a claim against insured’s UM policy); Brown v. USAA Cas. Ins. Co., 17 Kan.App.2d 547, 549, 840 P.2d 1203, 1205, review denied, 252 Kan. 1091 (1992) (court held that because nothing in the statute required the insured to exhaust his remedies against the tortfeasor before bringing a claim for UM benefits, the exhaustion clause was unenforceable). These decisions rest, however, on the absence of a statute authorizing UM insurers to include such exhaustion provisions in their policies, rendering them inapposite to Maryland’s UM construct.
VI.
Finally, we reject the Kurtzes’ argument that to read § 19-509(g) as we have done runs afoul of the remedial purpose of UM legislation in Maryland. It is certainly true that the law requiring UM coverage “is remedial in nature and should be liberally construed in order to ‘effectuate its purpose of assuring recovery for innocent victims of motor vehicle accidents.’ ” Crespo, 154 Md.App. at 394, 840 A.2d 156 (citation omitted). And it is for this reason that, “ ‘under Maryland’s compulsory automobile insurance statute, contractual exclusions in automobile insurance policies that excuse or reduce benefits below the minimum statutorily required levels or types of coverage, and are not expressly authorized by the General Assembly, are invalid.’ ” Stearman v. State Farm Mut. Auto. Ins. Co., 381 Md. 436, 445 n. 5, 849 A.2d 539, 544 n. 5, (2004); accord Salamon v. Progressive Classic Ins. Co., 379 *156 Md. 301, 311-12, 841 A.2d 858 (2004); Lewis, 368 Md. at 48, 792 A.2d 272.
Yet, “[d]espite the fact that the uninsured motorist statute is to be liberally construed in favor of assuring recovery for innocent victims of motor vehicle accidents, liberal construction does not permit a departure from the legislature’s intended application of the section.” Matta v. Gov’t Employees Ins. Co., 119 Md.App. 334, 344, 705 A.2d 29 (1998). Insurance companies providing underinsured motorist coverage are allowed to “limit their liability and to impose whatever condition they please in the policy so long as neither the limitation on liability nor the condition contravenes a statutory inhibition or the State’s public policy.” Walther v. Allstate Ins. Co., 83 Md.App. 405, 411, 575 A.2d 339, cert. denied, 320 Md. 801, 580 A.2d 219 (1990). Thus, the Court of Appeals repeatedly has upheld policy terms “that excused or reduced an insurer’s coverage below the statutory mínimums,” because the General Assembly has authorized those exclusions or exemptions. See Salamon, 379 Md. at 312-14, 841 A.2d 858 (collecting cases).
By enacting § 19-509(g), the General Assembly has made a judgment to permit UM insurers to limit their liability by requiring exhaustion of the underlying policy. We are bound to accept that expression of legislative will. See Stearman, op. at 454, 849 A.2d at 550 (stating that the Court “will not invade the province of the General Assembly and rewrite the law for them, no matter how just or fair we may think such a new law or public policy would be”).
VII.
The circuit court concluded that § 19-509(g) permitted Erie to incorporate the exhaustion requirements into its UM endorsement, and because the Kurtzes failed to exhaust the limit of the tortfeasor’s liability coverage, Erie could properly deny their claim for UM benefits. For all the reasons we have discussed, the circuit court was correct in that conclusion. We *157 therefore affirm the court’s decision to grant summary judgment in favor of Erie.
JUDGMENT AFFIRMED.
COSTS TO BE PAID BY APPELLANTS.

. By order issued pursuant to Maryland Rule 8-602, we remanded the case to the circuit court for entry of a final judgment as required by *147 Maryland Rule 2--601(a). That order was duly entered on the circuit court docket, rendering the judgment final for this Court's review.