2013 COA 47

**Philip JORDAN and Roberta Jordan, Plaintiffs–Appellants,**

v.

**SAFECO INSURANCE COMPANY OF AMERICA, INC., Defendant–Appellee.**

**Court of Appeals No. 12CA0934**

Colorado Court of Appeals, Div. VII.

Announced March 28, 2013

Roger Jatko, Parker, Colorado, for Plaintiffs–Appellants.

Dufford & Brown, P.C., Lawrence D. Stone, Christian D. Hammond, Denver, Colorado, for Defendant–Appellee.

Roberts Levin Rosenberg PC, Michael J. Rosenberg, Denver, Colorado, for Amicus Curiae The Colorado Trial Lawyers Association.

Opinion by JUDGE J. JONES

¶ 1 Plaintiffs, Philip Jordan and Roberta Jordan, appeal the district court's summary judgment in favor of defendant, Safeco Insurance Company of America, Inc., on their claim that Safeco unreasonably denied them underinsured motorist benefits. We affirm.

¶ 2 Among the issues the Jordans raise is an issue of first impression in Colorado. Under section 10–4–609, C.R.S.2012, as amended effective January 1, 2008, may an insurer providing underinsured motorist (UIM) insurance deny an insured such coverage for the difference between the limit of the tortfeasor's liability insurance coverage and the amount of a settlement paid by the tortfeasor to the insured? We conclude that it may.

## I. Background

¶ 3 In 2009, J.F., a minor driver, and the Jordans were involved in an automobile accident. The Jordans were injured, and they sued J.F. J.F.'s automobile insurance policy covered damages for injuries to others up to $100,000 per person or $300,000 per accident. Mr. and Mrs. Jordan settled their claims against J.F. for $60,000 and $38,500, respectively.

¶ 4 The Jordans sought UIM benefits under their policy with Safeco, asserting that the policy covers all damages unpaid under the settlements, up to the policy limit.[1] Safeco told the Jordans that their UIM coverage would be triggered only if either of them had damages exceeding the $100,000 liability limit of J.F.'s policy. Safeco valued Mr. Jordan's total damages from the accident at less than $100,000, and, although it is not clear from the record, we presume that Safeco similarly valued Mrs. Jordan's total damages at less than $100,000.

¶ 5 The Jordans sued Safeco, asserting claims for (1) common law bad faith breach of an insurance contract; (2) unreasonable delay and denial of payment of a claim for benefits in violation of sections 10–3–1115 and –1116, C.R.S.2012[2]; and (3) a deceptive trade practice in violation of the Colorado Consumer Protection Act (CCPA), sections 6–1–101 to –1121, C.R.S.2012. The Jordans moved for summary judgment on their claim under sections 10–3–1115 and –1116. Safeco moved for summary judgment on the bad faith claim and the claim under sections 10–3–1115 and –1116. Subsequently, the Jordans stipulated that neither of them could prove damages in excess of $100,000, and the court granted the Jordans' motion to dismiss their third claim under the CCPA.

¶ 6 The district court granted Safeco's motion for summary judgment. The court determined that under amended section 10–4–609, the Jordans' claims were viable only if either Mr. or Mrs. Jordan could establish damages exceeding $100,000 (J.F.'s policy limit).[3] Given the Jordans' stipulation that neither of them could prove damages exceeding $100,000, the district court concluded that no genuine issue of material fact remained, and that Safeco was entitled to judgment as a matter of law.

¶ 7 On appeal, the Jordans challenge only the district court's grant of summary judgment in favor of Safeco on their second claim under sections 10–3–1115 and –1116, and its refusal to grant them summary judgment on that claim. They concede that no material facts are disputed.

## II. Standard of Review

¶ 8 We review a grant of summary judgment de novo. *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 246 P.3d 651, 667 (Colo. 2011). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment

---

1. The terms "uninsured" and "underinsured" appear in tandem in both the insurance contract provision at issue and the statute at issue (section 10–4–609). Though section 10–4–609 is titled "Insurance protection against uninsured motorists—applicability," it concerns both uninsured and underinsured motorist coverage. Throughout this opinion, we refer only to underinsured motorist benefits, because J.F. was not an uninsured motorist.

2. These statutes give an insured a cause of action against an insurer for unreasonable delay or denial of payment of a claim for benefits. The insured may recover "two times the covered benefit" and reasonable attorney fees and costs.

3. The Jordans' UIM coverage under the Safeco policy was limited to $100,000.

as a matter of law. C.R.C.P. 56(c); *Amos v. Aspen Alps 123, LLC*, 2012 CO 46, ¶ 13, 280 P.3d 1256.

## III. Discussion

¶ 9 In challenging the district court's order granting summary judgment for Safeco and its refusal to grant their motion for summary judgment, the Jordans contend that Safeco unreasonably denied their UIM claim because payment was required by (1) the plain terms of the Safeco policy; and (2) section 10–4–609. We conclude, however, that Safeco's denial of coverage was legally permissible under both the clear language of the policy and the unambiguous terms of section 10–4–609. Therefore, Safeco did not unreasonably delay or deny a claim for payment of benefits in violation of sections 10–3–1115 and –1116 as a matter of law.

## A. The Safeco Policy

■ ¶ 10 The Safeco policy's UIM coverage provision (Part C, "INSURING AGREEMENT," section A) says that Safeco will pay damages under this coverage caused by an accident with an **underinsured motor vehicle** only if 1. or 2. below applies: 1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements, or 2. [not applicable].[4]

¶ 11 The policy later defines an underinsured motor vehicle (in Part C, "INSURING AGREEMENT," section C) as follows:

"Underinsured motor vehicle" means a land motor vehicle, the ownership, maintenance or use of which is insured or bonded for bodily injury at the time of the accident, but the amount paid for bodily injury under such insurance or bonds is not enough to pay the full amount the insured is legally entitled to recover as damages.

¶ 12 And, as also relevant here, the UIM portion of the policy contains a provision regarding the effect of other insurance on

UIM coverage (in Part C, "OTHER INSURANCE," section B). It states: "[UIM] Coverage shall be excess over all bodily injury liability bonds or policies applicable at the time of the accident."

■ ¶ 13 We review the interpretation of an insurance contract de novo, employing "well-settled principles of contractual interpretation." *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo.2002); *accord Shelter Mut. Ins. Co.*, 246 P.3d at 666. We construe the plain language of the contract to fulfill the intent of the insured and the insurer, and we resolve ambiguities in favor of the insured. *Shelter Mut. Ins. Co.*, 246 P.3d at 666.

■ ¶ 14 We agree with Safeco and the district court that the policy terms unambiguously provide for payment of UIM benefits only for damages above the tortfeasor's insurance policy liability limit.

¶ 15 The relevant UIM coverage provision states that Safeco will pay UIM benefits if "the limits of liability ... have been exhausted by payment of judgments or settlements." These terms clearly restrict Safeco's UIM liability to amounts exceeding an underinsured tortfeasor's insurance policy's limit of liability. Contrary to the Jordans' assertion, the coverage provision does not say that the tortfeasor's limit of liability is deemed to be exhausted by the payment of any judgment or settlement, regardless of the amount. Rather, it plainly conditions payment of UIM benefits on exhaustion of the tortfeasor's limit of liability, however such exhaustion occurs. *See Birchfield v. Nationwide Ins.*, 317 Ark. 38, 875 S.W.2d 502, 503 (1994) (holding that similar language unambiguously required exhaustion of tortfeasor's policy limit before UIM coverage was available); *Hill v. Am. Family Mut. Ins. Co.*, 150 Idaho 619, 249 P.3d 812, 815–16 (2011) (noting that identical policy language is common in the insurance industry and holding that it unambiguously requires exhaustion of a tortfeasor's

---

4. The terms appearing in bold type in this opinion appear in bold type in the policy. In insurance contracts, terms appearing in bold print usually have a special meaning defined elsewhere in the policy. *See, e.g., Mid–Century Ins.*

*Co. v. Robles*, 271 P.3d 592, 595 n. 2 (Colo.App. 2011) (noting that policy terms written in bold type are defined terms); *Miller v. Ho Kun Yun*, 400 S.W.3d 779, 785–86 (Mo.Ct.App.2013) (same, with respect to a UIM provision).

policy limit before UIM coverage is available); *see also Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo.1994) (mere disagreement regarding the interpretation of an insurance policy term does not create an ambiguity).

■ ¶ 16 Also contrary to the Jordans' assertion, the policy's definition of "underinsured motor vehicle" does not dictate a different conclusion. To be sure, a condition of UIM coverage under the policy is that the vehicle is underinsured, as defined in the policy. But, as noted, the coverage provision further conditions payment of UIM benefits – as relevant here, by requiring exhaustion of the tortfeasor's liability policy limit. The definition of "underinsured motor vehicle" does not negate that further condition.

¶ 17 The cases on which the Jordans rely primarily, *Freeman v. State Farm Mut. Auto. Ins. Co.*, 946 P.2d 584 (Colo.App.1997); *State Farm Mut. Auto. Ins. Co. v. Tye*, 931 P.2d 540 (Colo.App.1996); and *State Farm Mut. Auto. Ins. Co. v. Bencomo*, 873 P.2d 47 (Colo.App.1994), are distinguishable. In *Freeman* and *Bencomo*, the relevant policy provisions granted coverage once the limits of liability for all bodily injury policies had been "used up" by payments of settlements or judgments. *Freeman*, 946 P.2d at 585; *Bencomo*, 873 P.2d at 49. The divisions analyzed the meaning of those provisions in light of the former version of section 10–4–609. As discussed in Part III.B below, before the 2008 amendments to that section, subsection (5) of the statute required UIM coverage for damages in excess of amounts *paid* pursuant to a tortfeasor's liability policy. As amended, however, section 10–4–609 requires coverage for amounts in excess of a tortfeasor's liability policy limit.

¶ 18 *Tye* also relied on the prior version of section 10–4–609. The division expressly construed the phrase "paid or payable" in the UIM coverage provision there at issue in light of former subsection 10–4–609(5). *Tye*, 931 P.2d at 542–43.

¶ 19 The coverage provision at issue in this case does not include that same "used up" or "paid or payable" language at issue in the cases decided under the prior version of section 10–4–609. And, the policy here includes

an additional relevant provision not mentioned in the earlier cases: namely, the "other insurance" provision in the UIM part of the policy, stating that "[UIM] Coverage shall be excess over all bodily injury liability bonds or policies applicable at the time of the accident." This provision, like the coverage provision, clearly indicates that UIM benefits are payable only after the limit of the tortfeasor's liability policy is exhausted. *See Apodaca v. Allstate Ins. Co.*, 255 P.3d 1099, 1103 (Colo.2011) (discussing "excess" insurance); *DiCocco v. Nat'l Gen. Ins. Co.*, 140 P.3d 314, 316 (Colo.App.2006) ("An excess insurer is one whose coverage of a given loss is activated only after the magnitude of the loss exceeds the limits of the applicable 'primary' insurance.").

¶ 20 And in any event, the prior version of section 10–4–609 does not apply to this case. Because the decisions in *Freeman, Tye,* and *Bencomo* were based in large part (perhaps entirely) on the prior version of section 10–4–609, they do not influence the outcome here.

### B. Section 10–4–609

■ ¶ 21 Next, the Jordans contend that under the current version of section 10–4–609, an insured's good-faith settlement with a tortfeasor necessarily "exhausts" the tortfeasor's liability limits. Thus, they argue, if their Safeco policy does not cover the difference between what they received in settlement and J.F.'s insurance policy liability limit, the condition on UIM coverage in the Safeco policy is unenforceable. We reject this contention.

■ ¶ 22 Even if a UIM coverage provision is unambiguous, we may conclude that it is void if it conflicts with the UIM insurance statute by diluting, conditioning, or limiting coverage mandated thereby. *Farmers Ins. Exch. v. Anderson*, 260 P.3d 68, 75 (Colo. App.2010); *see DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167, 173 (Colo.2001) ("An insurance contract that denies statutorily mandated coverage is void and unenforceable."). We perceive no such conflict here.

■ ¶ 23 Section 10–4–609 is intended "to ensure the widespread availability of protec-

tion to persons, against financial losses caused by financially irresponsible motorists," *Apodaca v. Allstate Ins. Co.*, 232 P.3d 253, 259 (Colo.App.2009), *aff'd*, 255 P.3d 1099 (Colo.2011), but "not to 'require full indemnification of losses suffered at the hands of uninsured [or underinsured] motorists under all circumstances.'" *Roque v. Allstate Ins. Co.*, 2012 COA 10, ¶ 23, 318 P.3d 1 (quoting in part *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 61 (Colo.1990)).

¶ 24 Before the 2008 amendments to section 10–4–609, subsection (5) thereof provided:

> The maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of:
>
> (a) The difference between the limit of uninsured motorist coverage and the *amount paid* to the insured by or for any person or organization who may be held legally liable for the bodily injury; or
>
> (b) The amount of damages sustained, but not recovered.

Ch. 92, sec. 1, § 10–4–609(5), 1983 Colo. Sess. Laws 455 (emphasis added).

¶ 25 Underinsured motor vehicles were defined, as relevant here, as vehicles insured for less than the uninsured motorist coverage under the insured's policy, or vehicles for which payments to persons other than the insured reduced coverage for the vehicle to less than the uninsured motorist coverage under the insured's policy. *See* Ch. 92, sec. 1, § 10–4–609(4), 1983 Colo. Sess. Laws 455.

¶ 26 Senate Bill 07–256, now codified at sections 10–4–609 and 10–4–418,[5] C.R.S.2012, amended the UIM statute, as relevant here, by (1) deleting subsection 10–4–609(5), noted above; (2) redefining an underinsured motor vehicle simply as a "land motor vehicle ... which is insured ... for bodily injury or death at the time of the accident," § 10–4–609(4); (3) increasing the UIM coverage an insurer must offer to an amount at least equal to the insured's bodily injury liability limit, *see* § 10–4–609(2); and (4) adding sub-

section 10–4–609(1)(c), which provides, as relevant here:

> [Underinsured motorist coverage] shall be *in addition to any legal liability coverage* and shall cover the difference, if any, between the *amount of the limits of any legal liability coverage* and the amount of the damages sustained ... up to the maximum amount of the coverage obtained pursuant to this section.... The amount of the coverage available pursuant to this section shall not be reduced by a setoff from any other coverage ....

(Emphasis added.)

¶ 27 It is against this backdrop that we must consider the Jordans' statutory construction argument, and the three cases on which they again rely, *Freeman, Tye,* and *Bencomo.* Taken together, those cases stand for the proposition that UIM benefits must be provided for damages in excess of any amount paid by a tortfeasor in settlement or of any judgment against the tortfeasor. But, as discussed above, the statute which was the linchpin of the holdings in those cases, section 10–4–609, has since been changed materially.

▪ ¶ 28 We presume that the General Assembly has knowledge of existing statutes and relevant judicial decisions when it enacts legislation. *In re Miranda*, 2012 CO 69, ¶ 17, 289 P.3d 957; *Colo. Water Conservation Bd. v. City of Central*, 125 P.3d 424, 434 (Colo.2005). "Thus, when a statute is amended, the previous judicial construction stands only to the extent that it remains unaffected by the amendment." *People v. O'Donnell*, 926 P.2d 114, 115 (Colo.App.1996); *accord Rauschenberger v. Radetsky*, 745 P.2d 640, 643 (Colo.1987) ("When a statute is amended, the judicial construction previously placed upon the statute is deemed approved by the General Assembly to the extent that the provision remains unchanged.").

▪ ¶ 29 As noted, effective January 1, 2008 (before the effective date of the Jordans' policy and the accident in this case), the General Assembly repealed subsection

---

**5.** Subsection 10–4–418(2)(c), which had expressly permitted anti-stacking provisions in insur-ance contracts, was repealed by the bill.

10–4–609(5), the portion of the statute requiring UIM coverage of the difference between the amount paid to an injured insured and the limit of the insured's UIM coverage. New subsection 10–4–609(1)(c) instead requires that UIM coverage "shall be in addition to any legal liability coverage and shall cover the difference, if any, between the amount of the limits of any legal liability coverage and the amount of the damages sustained...." The amended statutory language is plain and unambiguous. The insurer's obligation to pay benefits is now triggered by exhaustion of the tortfeasor's "limits of ... legal liability coverage," not necessarily any payment from or judgment against the tortfeasor. *Vignola v. Gilman,* No. 2:10–CV–02099–PMP, 2013 WL 495504, at * 13 (D.Nev.2013) (interpreting § 10–4–609(1)(c)); *see Thyssenkrupp Safway, Inc. v. Hyland Hills Parks & Recreation Dist.,* 271 P.3d 587, 590 (Colo.App.2011) ("If the plain language of the statute is clear and unambiguous, we apply the statute as written, unless doing so leads to an absurd result."). Thus, *Freeman, Tye,* and *Bencomo* do not guide our construction of amended section 10–4–609.

¶ 30 Had the General Assembly intended to preserve UIM coverage for the gap between a settlement amount and a tortfeasor's liability policy limit, it could have incorporated the language from subsection 10–4–609(5), or similar language, into the amendments. It did not. Instead, it used materially different language plainly changing the meaning of the statute. Essentially, it changed Colorado's UIM statutory scheme from a "reduction" approach—where UIM coverage was reduced by any payment received or judgment against the tortfeasor—to an "excess" approach—where UIM coverage is payable for damages exceeding the tortfeasor's liability policy limit, subject only to the UIM coverage limit in the insured's policy. *See Curran v. Progressive Northwestern Ins. Co.,* 29 P.3d 829, 832 (Alaska 2001) (discussing the difference between the two approaches in the UIM context); *see also DiCocco,* 140 P.3d at 316 (defining an excess insurer). The excess approach is favored by many, perhaps most, states.

¶ 31 Nonetheless, the Jordans (and amicus curiae the Colorado Trial Lawyers Association) contend that interpreting subsection 10–4–609(1)(c) in this way leads to absurd results because that interpretation (1) creates a gap of uncovered damages in cases like this; (2) benefits insurers, in contravention of public policy; and (3) will encourage more litigation. We are not persuaded.

¶ 32 The facts of this case present a situation where the insureds may suffer a gap in coverage, and would have been better off under the old version of the statute.[6] But that is not an absurd result.

¶ 33 Courts in many other states have held that under UIM statutes (or former statutes, in the case of Minnesota) worded similarly to section 10–4–609(1)(c), insurers are required to pay UIM benefits, if at all, only when the insured's damages exceed the tortfeasor's liability policy limit; the UIM insurer is not required to pay for any gap in coverage. *See, e.g., Aetna Cas. & Sur. Co. v. Farrell,* 855 F.2d 146, 149–50 (3d Cir.1988) (applying New Jersey law); *Curran,* 29 P.3d at 832; *Country Mut. Ins. Co. v. Fonk,* 198 Ariz. 167, 7 P.3d 973, 976, 978 (Ariz.Ct.App.2000); *Taylor v. Gov't Employees Ins. Co.,* 90 Hawai'i 302, 978 P.2d 740, 752 (1999); *Hill,* 249 P.3d at 821; *Schmidt v. Clothier,* 338 N.W.2d 256, 261 (Minn.1983); *White v. Continental Ins. Co.,* 119 Nev. 114, 65 P.3d 1090, 1092 (2003); *Buzzard v. Farmers Ins. Co., Inc.,* 824 P.2d 1105, 1112 (Okla.1991); *D'Adamo v. Erie Ins. Exch.,* 4 A.3d 1090, 1095 (Pa.Super.Ct.2010); *Cobb v. Benjamin,* 325 S.C. 573, 482 S.E.2d 589, 590, 597 (S.C.Ct.App.1997); *Olivas v. State Farm Mut. Auto. Ins. Co.,* 850 S.W.2d 564, 565 (Tex.App.1993); *Hamilton v. Farmers Ins. Co. of Washington,* 107 Wash.2d 721, 733 P.2d 213, 217 (1987).[7]

---

6. As discussed below in footnote 7, we do not decide whether an insured must actually exhaust the limit of the tortfeasor's liability policy before being entitled to any UIM coverage. If so, there would not be a "gap" because the insurer would not be liable at all absent actual exhaustion of the tortfeasor's liability policy coverage.

7. It appears that every court to have addressed the issue of gap coverage under UIM statutes similar to amended section 10–4–609 has held

¶ 34 The court in *Schmidt* articulated the public policy reasons for not allowing an insured to recover the gap from the UIM insurer. If an insured could recover the gap from the UIM insurer, the insured would not have an incentive to obtain the best settlement from the tortfeasor, the tortfeasor (or the tortfeasor's insurer) would have less incentive to make its best offer, the UIM insurer would be placed at an unfair disadvantage because it would be liable without having any ability to control the insured's right to settle with the tortfeasor, and UIM claims processing would be delayed. 338 N.W.2d at 261; *see Boyle v. Erie Ins. Co.*, 441 Pa.Super. 103, 656 A.2d 941, 943 (1995) ("The statutorily mandated coverage for underinsured motorist benefits was not intended to permit the insured absolute and arbitrary discretion to determine how payment should be apportioned between his or her own insurance company and the tortfeasor's liability carrier.").

¶ 35 In essence, the Jordans (and amicus) contend that any interpretation of insurance statutes which could result in less coverage than was available under prior law must be against public policy. But the statute necessarily reflects public policy. *Hurley*, 90 Cal. Rptr.2d at 701. And the Jordans have not cited any authority for the proposition that the General Assembly cannot change the law in a way that, in some instances, may prove detrimental to insureds. We are not at liber-ty to impose any such policy restriction on the actions of the General Assembly. *Hamill v. Cheley Colo. Camps, Inc.*, 262 P.3d 945, 954 (Colo.App.2011) (judiciary's role is to recognize and enforce public policy implemented by the General Assembly); *see Board of Cnty. Commr's v. Colo. Dep't of Pub. Health & Env't*, 218 P.3d 336, 343 n. 11 (Colo.2009) (public policy concerns are properly addressed to the General Assembly); *Scoggins v. Unigard Ins. Co.*, 869 P.2d 202, 205 (Colo.1994) ("We will not judicially legislate by reading a statute to accomplish something the plain language does not suggest, warrant[,] or mandate."); *see Curran*, 29 P.3d at 833 ("public policy can guide statutory construction but cannot override a clear and unequivocal statutory requirement").

¶ 36 As noted, the General Assembly's decision not to require coverage for the so-called gap serves legitimate policy interests. And we observe that, considered as a whole, the General Assembly's amendments to the UIM statute will, in most if not all cases, as discussed below, prove more beneficial to the insureds than prior law.

¶ 37 The new version of the UIM statute increases the amount of UIM coverage that an insurer must offer. § 10–4–609(2).[8] And, as discussed, a UIM insurer may no longer set off its liability, dollar for dollar, based on payments by or a judgment against a tortfeasor. § 10–4–609(1)(c).[9] For example, under

that the UIM insurer is not liable for the gap. Some enforce exhaustion clauses similar to that in Safeco's policy to hold that the insurer does not have to pay any UIM benefits unless the tortfeasor's liability policy limit is actually exhausted, regardless whether the insured's damages exceed that limit. *See, e.g., Farmers Ins. Exch. v. Hurley*, 76 Cal.App.4th 797, 90 Cal. Rptr.2d 697, 699–702 (1999); *Hill*, 249 P.3d at 818 n. 5 (collecting cases upholding exhaustion clauses); *Kurtz v. Erie Ins. Exch.*, 157 Md.App. 143, 849 A.2d 1050, 1053–55 (Md.Ct. Spec.App.2004). Other courts hold that such exhaustion clauses are unenforceable as against public policy, but also hold that the insurer is entitled to credit for the full amount of the tortfeasor's liability policy limit in all circumstances. *See Hill*, 249 P.3d at 818 (collecting cases holding the underinsurer may always credit the full amount of the tortfeasor's liability coverage against the insured's damages). Under either approach, the insurer is not liable for the difference between the tortfeasor's liability policy limit and any payment from or judgment against the tortfeasor. We need not decide in this case which approach is consistent with Colorado law because of the Jordans' stipulation that neither of them has damages exceeding J.F.'s liability policy limit of $100,000.

8.  The insurer must offer UIM coverage. But the named insured may reject it in writing. § 10–4–609(1)(a).

9.  This is the purpose of the last sentence of subsection 10–4–609(1)(c) ("The amount of coverage available pursuant to this section shall not be reduced by a setoff from any other coverage...."). Contrary to the Jordans' suggestion, that sentence does not mean that an insurer is liable for any amount above what an insured receives from a tortfeasor, regardless of the tortfeasor's liability policy limit. Such an interpretation would negate the first sentence of the subsection.

the old version of the statute, if both a tortfeasor's liability policy and an injured party's UIM policy had $50,000 limits, the injured party's total recovery could have been limited to $50,000. *See Vaccaro v. Am. Family Ins. Gp.,* 2012 COA 9, ¶ 59, 275 P.3d 750 (under old version of the statute, when insured had a $100,000 UIM policy limit and recovered $25,000 from the tortfeasor, the insured retained only $75,000 in available UIM benefits); *see also Carlisle v. Farmers Ins. Exchange,* 946 P.2d 555, 558 (Colo.App. 1997) ("Insurers are allowed ... to offset from UM/UIM coverage amounts received by an insured from a tortfeasor's liability carrier...."). But under the new version of the statute, assuming the same policy limits, the insured may recover up to $100,000. Further, UIM insurers are now liable for coverage even if the tortfeasor's liability coverage is greater than the UIM coverage. § 10–4–609(4).

¶ 38 Also, under the new statutory scheme, insurers of all potentially applicable UIM policies (such as those covering the vehicle, driver, passenger, or pedestrian) are liable for damages, as the policies must be allowed to "stack" – that is, a second policy's coverage begins where the first policy's coverage leaves off, without reducing the amount of available recovery under the second policy. *See* § 10–4–609(1)(c); *Snell v. Progressive Preferred Ins. Co.,* 260 P.3d 37, 38 (Colo.App. 2010) (discussing the amendments to § 10–4–609).

¶ 39 Nor are we swayed by the Jordans' argument that allowing insureds to be responsible for a gap in coverage will "coerce" insureds to sue, rather than settle with, tortfeasors. The amendments to section 10–4–609 do not diminish the factors that generally encourage settlement. And enforcing the plain language of the amended statute will eliminate litigation between insureds and insurers over the reasonableness of insureds' settlements with tortfeasors. In any event, we are not free to rewrite the statute because enforcement of the unambiguous language might lead to a marginal increase in litigation.

¶ 40 We conclude that the district court properly determined that, as a matter of law,

Safeco was not obligated to pay UIM benefits to the Jordans. It follows that Safeco was entitled to summary judgment on the Jordans' claim under sections 10–3–1115 and –1116.

¶ 41 The judgment is affirmed.

JUDGE BERNARD and JUDGE RICHMAN concur.