Opinion by JUDGE BERGER
¶ 1 This is a dispute over underinsured motorist (UIM) benefits. Defendant, State Farm Mutual Automobile Insurance Company, appeals the judgment entered on a jury verdict in favor of plaintiff, Dale Fisher, for unreasonable delay or denial of payment of benefits under sections 10-3-1115 and 10-3-1116, C.R.S.2014. These statutes establish a civil cause of action for an insurer's unreasonable delay or denial of "payment of a claim for benefits owed to ... any first-party claimant." § 10-3-1115(1).
¶ 2 State Farm contends that (1) as a matter of law, it did not unreasonably delay or deny payment of Fisher's UIM claim; (2) the district court erred in excluding testimony of State Farm's insurance expert; and (3) the district court erred in excluding evidence of Fisher's prior felony convictions. We address and reject each of these contentions and therefore affirm.
I. Relevant Facts and Procedural History
¶ 3 In February 2010, Fisher was injured in a collision between the vehicle he was driving and another vehicle. The other vehicle's driver carried $25,000 in automobile liability insurance. Fisher was insured under several automobile insurance policies with State Farm that had a combined UIM coverage limit of $400,000.
¶ 4 In September 2010, Fisher presented State Farm with a claim for UIM benefits totaling $1.35 million, the amount of damages he contended he had incurred from the accident. In December 2010, State Farm gave consent for Fisher to settle with the other driver's insurer for the driver's policy limits of $25,000.
¶ 5 In February 2011, State Farm offered to settle Fisher's UIM claim against it for $59,572.10. Fisher rejected the offer. On July 7, 2011, Fisher filed a complaint against State Farm alleging, among other things, that, because State Farm had not paid him any UIM benefits by that date, it had unreasonably delayed or denied payment of benefits in violation of section 10-3-1115.
¶ 6 At trial, the parties stipulated that the other driver was solely at fault for the accident; that Fisher had settled his liability claim against the other driver for the driver's liability limits of $25,000; and that State Farm had not paid any UIM benefits to Fisher.
¶ 7 At the close of Fisher's case-in-chief, State Farm moved for a directed verdict on Fisher's statutory claim. The trial court denied the motion.
¶ 8 The jury returned a verdict for Fisher in the amount of $780,572. The jury also found that State Farm had unreasonably delayed payment to Fisher for medical expenses totaling $61,125.16.
¶ 9 The trial court entered judgment for Fisher against State Farm for $400,000 (the UIM policy limits), plus $122,250.32 (Fisher's medical expenses multiplied by two) as a statutory penalty under section 10-3-1116 for the unreasonable delay of payment. Also under section 10-3-1116, the court awarded Fisher $51,100 in attorney fees and $54,175.21 in costs.
¶ 10 State Farm appeals only the portion of the judgment reflecting the jury's finding that State Farm had unreasonably delayed payment of medical benefits.
*988 II. Fisher's Unreasonable Delay of Benefits Claim Does Not Fail as a Matter of Law
¶ 11 Section 10-3-1115(1) provides that "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." If a claim for payment of benefits has been unreasonably delayed or denied, the claimant "may bring an action ... to recover reasonable attorney fees and court costs and two times the covered benefit." § 10-3-1116(1).
¶ 12 State Farm argues that the trial court erred in denying its motion for a directed verdict on Fisher's statutory claim because Fisher's medical expenses were not, as a matter of law, benefits owed to Fisher at the time he initiated the lawsuit. Therefore, according to State Farm, it could not have unreasonably delayed payment of owed UIM benefits. State Farm's argument raises a number of related issues, which we discuss in turn.
A. An Insurer's Obligation to Tender the Amount of a Rejected Settlement Offer
¶ 13 The arguments in the parties' briefs are like ships passing in the night. State Farm contends that the theory of Fisher's statutory claim was that State Farm should have paid Fisher the amount of its initial settlement offer after Fisher rejected the offer. State Farm argues, persuasively, that no such obligation existed under either the terms of the insurance policy or the statute.
¶ 14 Fisher argues, on the other hand, that this was not the theory upon which the case was tried and he never argued to the jury that State Farm breached its duty under section 10-3-1115 by failing to pay the settlement offer. Instead, Fisher contends that the claim that was tried to the jury was that State Farm failed to pay medical expenses incurred by Fisher that State Farm internally had determined were reasonable, covered by the UIM policy, and causally related to the accident.
¶ 15 State Farm is correct that an assertion that it breached its duty under section 10-3-1115 by failing to pay Fisher the initial settlement offer is inconsistent with Colorado law. As the trial court explained in a pretrial order, CRE 408 expressly prohibits the admission into evidence of the amount of a settlement offer to prove the "amount of a claim that was disputed." Colorado law thus prohibits the conclusion that State Farm's initial settlement offer represents an admission that the amount of the offer was the amount of benefits owed to Fisher for his medical expenses. Cf. Spendrup v. Am. Family Mut. Ins. Co., No. 13-CV-00513-KLM, 2014 WL 321155, at *2 (D.Colo. Jan. 29, 2014) (unpublished opinion) (relying on Fed.R.Evid. 408 in refusing to consider a settlement offer to determine whether the defendant insurer failed to pay an "undisputed amount[ ] of benefits" under the applicable insurance policy) (emphasis added); Sunahara v. State Farm Mut. Auto. Ins. Co., 2012 CO 30M, ¶ 23, 280 P.3d 649 (An insurance agent's "settlement authority does not constitute a final, objective assessment of a claims [sic] worth to which an insurer may be held." (internal quotation marks omitted)).
¶ 16 However, although there was confusion during the proceedings as to the theory advanced by Fisher, the record, especially the jury instructions and special verdict form, establishes that Fisher is correct regarding the claim advanced at trial and adjudicated by the jury. That claim was that State Farm unreasonably delayed paying benefits to Fisher to cover his medical expenses, which were owed regardless of State Farm's settlement offer. Therefore, to the extent that State Farm's argument is based on the lack of an obligation to pay Fisher the amount of the initial settlement offer, we do not further address it.
B. Determination of the Amount of Compensatory Damages an Insured is Legally Entitled to Collect from the Underinsured Motorist
¶ 17 In its opening brief, State Farm asserts:
Under [the relevant] policy language, in order for an insured to have a viable statutory *989 claim that an insurer unreasonably delayed paying UIM benefits owed to the insured, the insurer and insured must either agree to the amount of the compensatory damages to which the insured is legally entitled to collect from the underinsured driver, or the amount of compensatory damages must be resolved in a lawsuit that the insured initiates against the insurer. Because neither of those conditions had been met at the time [Fisher] brought his statutory claim against State Farm in this case, State Farm was entitled to directed verdict at the close of [Fisher's] case-in-chief, and is entitled to judgment as a matter of law now.
(Emphasis added.)
¶ 18 This is the extent of State Farm's argument on this issue. State Farm devotes the remainder of its opening brief, as well as its reply brief, to arguing that the amount of Fisher's UIM claim against State Farm was undetermined at the time the lawsuit was initiated; it does not further discuss its assertion that the amount of Fisher's claim against the underinsured motorist was undetermined. We generally decline to address arguments presented to us in a conclusory manner that are lacking citations to any supporting authority. See, e.g., S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v. Weinstein, 2014 COA 171, ¶ 35, 343 P.3d 1044.
¶ 19 But even considering this argument on its merits, we reject it. Under the UIM statute, § 10-4-609, C.R.S.2014, as amended in 2007, an "insurer's obligation to pay [UIM] benefits is ... triggered by exhaustion of the tortfeasor's limits of ... legal liability coverage, not necessarily any payment from or judgment against the tortfeasor." Jordan v. Safeco Ins. Co. of Am., Inc., 2013 COA 47, ¶ 29, 348 P.3d 443 (internal quotation marks omitted). Accordingly, it is no longer the case that UIM benefits are not owed until third-party liability has been determined. Baker v. Allied Prop. & Cas. Ins. Co., 939 F.Supp.2d 1091, 1109-10 (D.Colo.2013). Rather, a UIM "insurer is ... responsible for damages exceeding the tortfeasor's liability policy limit, subject only to the UIM coverage limit in the insured's policy." Id. at 1110 (internal quotation marks omitted).
¶ 20 The amended UIM statute thus precludes State Farm from relying on any policy language that purports to prevent Fisher from establishing a claim under section 10-3-1115 until the amount of compensatory damages to which he is legally entitled to collect from the underinsured motorist has been determined. Therefore, to the extent that State Farm argues that its conduct could not have been unreasonable because the amount the underinsured motorist owed to Fisher had not been determined at the time he initiated the lawsuit, this argument is inconsistent with Colorado law. See id.
C. Insurer's Obligation to Pay a UIM Claim on a Piecemeal Basis
¶ 21 State Farm's principal argument on appeal is that it had no legal obligation to pay Fisher's UIM claim on a "piecemeal" basis. According to State Farm, because a genuine disagreement as to the total amount of benefits owed on Fisher's entire UIM claim existed when the lawsuit was filed, State Farm had no obligation to pay any part of Fisher's claim, including his medical expenses. It thus could not have owed Fisher any benefits while the value of the entire claim remained "fairly debatable," and accordingly, as a matter of law, it could not have unreasonably delayed "payment of a claim for benefits owed" to Fisher. We reject this argument for two reasons.
1. Fair Debatability and Prior Determination of Benefits Owed
¶ 22 First, we disagree with State Farm that, under section 10-31115, an insurer's decision to delay or deny payment of a "fairly debatable" UIM claim cannot be unreasonable as a matter of law. Section 10-3-1115(2) defines the standard of unreasonableness "for the purposes of an action brought pursuant to [ section 10-3-1115 ] and section 10-3-1116." Kisselman v. Am. Family Mut. Ins. Co., 292 P.3d 964, 972 (Colo.App.2011) (internal quotation marks omitted). It provides that "an insurer's delay or denial was unreasonable if the insurer delayed or denied *990 authorizing payment of a covered benefit without a reasonable basis for that action." § 10-3-1115(2).
¶ 23 Accordingly, unlike a common law insurance bad faith claim, in which the insured has to prove both that the insurer acted unreasonably under the circumstances and that the insurer knowingly or recklessly disregarded the validity of the insured's claim, Sanderson v. Am. Family Mut. Ins. Co., 251 P.3d 1213, 1217 (Colo.App.2010), "the only element at issue in [a] statutory claim [under section 10-3-1115 ] is whether an insurer denied benefits without a reasonable basis," Vaccaro v. Am. Family Ins. Grp., 2012 COA 9, ¶ 44, 275 P.3d 750. Whether a claim is " 'fairly debatable' ... goes as much to the knowledge or recklessness prong of common law bad faith as it does to unreasonable conduct." Id. ; see also Pham v. State Farm Mut. Auto. Ins. Co., 70 P.3d 567, 572 (Colo.App.2003) ("If an insurer does not know that its denial of a claim is unreasonable and does not act with reckless disregard of a valid claim, the insurer's conduct would be based upon a permissible, albeit mistaken, belief that the claim is not compensable."). So "[e]ven if [a] plaintiff's claim for UIM benefits were 'fairly debatable' in the common law context, that would not alone establish that [the] defendant's actions ... were reasonable as a matter of law." Vaccaro, ¶ 44.
¶ 24 Therefore, although "if a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable' (i.e., ... reasonable minds could disagree as to the coverage-determining facts or law), ... this weighs against a finding that the insurer acted unreasonably," Sanderson, 251 P.3d at 1217, "fair debatability is not a threshold inquiry that is outcome determinative as a matter of law," Vaccaro, ¶ 42 (internal quotation marks omitted).
¶ 25 We also reject State Farm's contention that "no benefits are owed [under section 10-3-1115 ] until either the parties reach an agreement with respect to the amount of [the claimant's] damages or [the claimant] has met [his] or her burden of proof in the appropriate judicial setting as to the amount of [his] or her damages." See Peden v. State Farm Mut. Auto. Ins. Co., No. 14-CV-00982-LTB-KLM, 2014 WL 4696401, at *2 (D.Colo. Sep. 22, 2014) (unpublished opinion). Instead, we agree with the United States District Court for the District of Colorado's rejection of this premise:
Under [this] logic, any insurer would be insulated from liability under § 10-3- 1115(1)(a) as long as they dispute the amount of "benefits owed," no matter how unreasonable the insurer's position. Put another way, a defendant insurer ... could unreasonably delay and/or deny a valid claim for benefits.... Despite this bad faith, however, the insurer could not be found liable under the statute unless and until its insured prosecuted a successful breach-of-contract suit against the insurer and won a judgment for damages. This would cause the insured to first need to successfully prosecute the breach-of-contract suit against the insurer, and then subsequently bring an entirely separate lawsuit seeking to prove a violation of [ section] 10-3-1115.... [This] surely cannot be what the ... General Assembly intended. Thus, the fact that the benefits owed to Plaintiff is currently in dispute does not mean that Plaintiff's statutory ... claim fails as a matter of law.
Id. (some internal quotation marks omitted); see also Vaccaro, ¶ 47 ("[A]n insurer [cannot] avoid liability for unjustified denials of benefits simply by framing each denial as a valuation dispute" because "every lawsuit over insurance coverage is a valuation dispute to the extent that the parties disagree about how much should be paid under a policy" and thus "[i]f every such claim [were] 'fairly debatable' as a matter of law, ... insurers could refuse to pay any claim where money is at issue.").
¶ 26 We therefore reject State Farm's contention that its failure to pay Fisher benefits could not have been unreasonable as a matter of law because it contends that the amount of Fisher's entire UIM claim, at the time he brought the lawsuit, was "fairly debatable."
2. Payment of Benefits on a Piecemeal Basis
¶ 27 We also reject State Farm's argument that its failure to pay Fisher's medical *991 expenses could not have been unreasonable because State Farm was not legally required to pay Fisher's UIM claim on a piecemeal basis. Neither the statute nor the policy requires that all of a claim be established beyond reasonable dispute before a duty to pay some of the claim that is not reasonably in dispute arises.
¶ 28 "[O]ur analysis [first] must focus on the statutory language found in sections 10-3-1115 and - 1116 to give effect to the intent of the General Assembly." Kisselman, 292 P.3d at 975. "The proper interpretation of a statute is a question of law we review de novo." Hansen v. Am. Family Mut. Ins. Co., 2013 COA 173, ¶ 45, 383 P.3d 28. Our goal in interpreting a statute "is to determine and give effect to the intent of the legislature," first by looking "to the plain and ordinary meaning of the statutory language." Id. "If the language of the statute is plain and its meaning is clear, it must be applied as written, and we do not resort to any [other means] of statutory interpretation." Id.
¶ 29 As noted above, section 10-3-1115(2) provides that "an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." (Emphasis added.) The plain language of the statute thus establishes that "[s]ections 10-3-1115 and -1116 deal with the denial, or delay in the payment of, a covered benefit, " Hansen, ¶ 51 (emphasis added), not the denial or delay of the payment of an entire insurance claim.[1]
¶ 30 It is undisputed that Fisher's medical expenses for injuries he incurred from the accident were a "covered benefit" under the UIM policy, notwithstanding that the remainder of Fisher's UIM claim was for damages other than medical expenses. Accordingly, under the plain language of section 10-3-1115, State Farm had a duty to not unreasonably delay or deny payment of Fisher's medical expenses.
¶ 31 State Farm contends that Colorado Division of Insurance Regulation 702-5:5-1-14 provides support for its argument that it is not unreasonable, as a matter of law, to deny or delay payment on anything less than an entire UIM claim. This regulation, which was "promulgated and adopted by the Commissioner of Insurance pursuant to §§ 10-1-109 and 10-3-1110, C.R.S.," provides "the procedure and circumstances under which [administrative] penalties will be imposed [on insurers] for failure to make timely decisions and/or payment on first party claims." Dep't of Regulatory Agencies Reg. 5-1-14, 3 Colo.Code Regs. 702-5:5-114(1), (2). It provides that insurers must "make a decision on claims and/or pay benefits due under the policy within sixty (60) days after receipt of a valid and complete claim unless there is a reasonable dispute between the parties concerning such claim." Id. at 702-5:5-1-14(4)(A)(1)(a) (emphasis added). State Farm argues that, pursuant to this regulation, it had no obligation to pay any benefits to Fisher because, at the time litigation was initiated, it had not received a "valid and complete claim." We reject this argument for several reasons.
¶ 32 First, the regulation and its authorizing statute simply have no application to the civil action established by section 10-3-1115. Rather, the regulation applies to administrative penalties assessed by the Commissioner of Insurance pursuant to the Commissioner's statutory authority to regulate the insurance industry. See § 10-1109, C.R.S. 2014 ("The commissioner may establish ... such reasonable rules as are necessary to enable the commissioner to carry out the commissioner's duties under the laws of the state of Colorado.").
¶ 33 Second, the regulation does not define "valid and complete claim." Instead, it provides that "[a] valid and complete claim is deemed received by the insurer" when:
(1) All information and documents necessary to prove the insured's claim have been received by the insurer;
*992 (2) A reasonable investigation of the information submitted has been completed by the insurer ...;
(3) The terms and conditions of the policy have been complied with by the insured;
(4) Coverage under the policy for the insured has been established for the claim submitted;
(5) There are no indicators on the claim requiring additional investigation before a decision can be made; and/or
(6) [inapplicable to the facts of this case];
(7) Negotiations or appraisals to determine the value of the claim have been completed; and/or
(8) Any litigation on the claim has been finally and fully adjudicated.
3 Colo.Code Regs. 702-5:5-1-14(4)(A)(2)(a). None of these factors address the issue presented here-whether an insured's demand for payment on one component of a UIM claim is sufficient in and of itself such that an insurer has an obligation to not unreasonably delay or deny paying benefits for it under section 10-3-1115.
¶ 34 Third, although administrative regulations "may be used as valid ... evidence of industry standards," Am. Family Mut. Ins. Co. v. Allen, 102 P.3d 333, 344 (Colo.2004), when a statute defines a standard of reasonableness, as it does here, an administrative regulation may not modify or contradict that standard, McCool v. Sears, 186 P.3d 147, 151 (Colo.App.2008). We have determined that the plain language of section 10-3-1115 does not preclude a determination that an insurer unreasonably denied or delayed payment of part of an insured's UIM claim. Thus, even if the regulation addressed this issue, it could not modify or contradict the plain language of the statute.
¶ 35 Lastly, State Farm has not pointed to anything in its policy that required Fisher to establish all of the damages he had incurred from the accident before State Farm had an obligation to pay any of them.[2] Nor has State Farm established that it was somehow incapable of paying a claim in pieces; rather, a State Farm representative testified at trial that a provision in State Farm's Automobile Claims Manual (its guide for how to handle its automobile claims) allowed it to make separate payments on a claim.
¶ 36 We thus hold that, under section 10-3-1115, State Farm was legally obligated to not unreasonably delay or deny payment of Fisher's medical expenses, notwithstanding that other components of his UIM claim may have been subject to reasonable dispute.
D. Sufficiency of the Evidence
¶ 37 State Farm argues that after Fisher rejected its settlement offer, its continuing investigation into Fisher's UIM claim revealed information calling his injury and wage loss claims into question. It therefore contends that, because this information, as well as Fisher's alleged refusal to cooperate in its investigation, established that there was a genuine disagreement as to the amount of compensable damages payable under the policy at the time Fisher initiated the lawsuit, Fisher's statutory claim must fail as a matter of law.
¶ 38 To the extent that State Farm argues that there was a genuine disagreement regarding the amount of benefits owed to Fisher for his medical expenses, we construe its argument as a challenge to the sufficiency of the evidence supporting the jury's verdict.
¶ 39 "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." Vaccaro , ¶ 41. State Farm thus can prevail on its argument that it is entitled to judgment *993 as a matter of law on Fisher's statutory claim because there was genuine disagreement regarding what it owed for his medical expenses only by establishing that the evidence of unreasonableness admitted at trial was insufficient to support the jury's verdict.
¶ 40 "When sufficiency of the evidence is challenged on appeal, we must determine whether the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the verdict." Parr v. Triple L & J Corp., 107 P.3d 1104, 1106 (Colo.App.2004). "It is the sole province of the jury to resolve disputed issues of fact and to determine the credibility of the witnesses, the weight to be accorded the testimony, and the inferences to be drawn from the evidence." Robinson v. City & Cnty. of Denver, 30 P.3d 677, 683 (Colo.App.2000). We will not disturb the jury's verdict on appeal if there is competent evidence in the record to support it. Karg v. Mitchek, 983 P.2d 21, 26 (Colo.App.1998).
¶ 41 We conclude that there was sufficient evidence introduced at trial to support the jury's verdict that State Farm unreasonably delayed paying Fisher's medical expenses. Evidence was presented that Fisher had presented medical bills to State Farm totaling $61,125 at the end of September 2010 and State Farm had not paid any of those bills by the time the lawsuit was filed in July 2011. A representative of State Farm testified that, as of February 2011 and until the date the lawsuit was filed, State Farm believed that those medical bills were reasonable, necessary, and a direct result of the accident.
¶ 42 Although there was also evidence introduced by State Farm that, after February 2011, it had received information calling into question the cause of Fisher's injuries, it was the jury's role to resolve any such conflicting evidence. The same principle applies to the evidence State Farm introduced that Fisher failed to cooperate with its investigation. The jury was instructed that "[a]n insured has a duty to cooperate with an insurer and assist with his claim." Thus, to the extent that an insured's lack of cooperation goes to whether an insurer's delay in payment was reasonable, the jury was free to, and presumably did, consider it.
¶ 43 Accordingly, viewing the evidence in the light most favorable to Fisher, we conclude that the evidence was sufficient to support the jury's verdict. State Farm's arguments to the contrary essentially ask us to reweigh all the evidence introduced at trial. We decline to do so because that is the role of the jury, not an appellate court.
E. Unconstitutional as Applied Challenge
¶ 44 State Farm argues that if sections 10-3-1115 and - 1116 are interpreted so broadly as to apply to its conduct, its constitutional due process right to receive fair notice that it could be punished for its conduct will be violated. We decline to address this contention because State Farm did not make this or any similar argument to the trial court, and we do not consider arguments in civil cases made for the first time on appeal. See Estate of Stevenson v. Hollywood Bar & Cafe, Inc., 832 P.2d 718, 721 n.5 (Colo.1992).[3]
¶ 45 Similarly, we do not address Fisher's argument that State Farm's constitutional challenge is improperly before this court because State Farm did not provide notice of the challenge to the Colorado Attorney General. Because no constitutional arguments were made in the trial court, it is not necessary for us to consider under what circumstances a party's failure to give notice to the Attorney General of a constitutional challenge would bar the assertion of that challenge in an appellate court.
III. The Exclusion of Testimony by State Farm's Expert was Harmless
¶ 46 State Farm argues that the trial court abused its discretion in excluding the testimony of its insurance industry standard expert. Assuming without deciding that the court erred in excluding this testimony, we conclude that the error was harmless.
*994 A. Proceedings in the Trial Court
¶ 47 State Farm filed a pretrial motion to exclude the testimony of Fisher's designated insurance expert. The trial court granted the motion because it correctly concluded that the expert's proffered opinion-that State Farm unreasonably denied or delayed payment to Fisher when it failed to advance the amount of its initial settlement offer-was contrary to Colorado law, and therefore Fisher's expert's proffered testimony did not meet the requirements of CRE 702 and CRE 403.
¶ 48 In response, Fisher filed a pretrial motion to exclude the testimony of State Farm's designated insurance expert. Fisher characterized State Farm's expert as a "rebuttal expert" whose report did nothing more than rebut the opinions set forth in Fisher's expert's report. Fisher therefore argued that because his expert had been excluded, State Farm's expert should be excluded as well. The trial court granted this motion.
B. Analysis
¶ 49 "We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion." Gonzales v. Windlan, 2014 COA 176, ¶ 20, 411 P.3d 878. "A trial court abuses its discretion only if its ruling is manifestly arbitrary, unreasonable, or unfair." Id.
¶ 50 CRE 702, which addresses expert testimony, provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." However, even if expert testimony is admissible under CRE 702, a trial court may preclude the testimony "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403.
¶ 51 Assuming without deciding that the expert's proffered testimony was admissible under CRE 702 and CRE 403, the exclusion of the testimony does not necessarily require reversal. "[W]e will reverse only if we can say with fair assurance that the trial court's exclusion of [the] evidence substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." Core-Mark Midcontinent, Inc. v. Sonitrol Corp., 2012 COA 120, ¶ 28, 300 P.3d 963 (internal quotation marks omitted).
¶ 52 State Farm argues that the exclusion of its expert's testimony "could not have been more prejudicial" because the determination of whether State Farm's conduct was reasonable required evidence of insurance industry standards, which are not a matter of common knowledge.
¶ 53 The reasonableness of an insurer's conduct is determined objectively, based on proof of industry standards. Sipes v. Allstate Indem. Co., 949 F.Supp.2d 1079, 1085 (D.Colo.2013). However, the Colorado Supreme Court has explained that expert testimony is not necessarily required to establish the standard of care under which to evaluate a defendant's conduct when a legislative enactment establishes that standard. Allen, 102 P.3d at 343. Section 10-3-1115(2) does so here by defining "unreasonableness" for the purpose of a claim under section 10-3-1115 or - 1116. See Kisselman, 292 P.3d at 972.
¶ 54 Moreover, in the context of an insurance bad faith claim, "[i]f the reasonable investigation and denial of an insured's claim is within the common knowledge and experience of ordinary people, then expert testimony is not required" to establish a standard of care actionable in tort. Allen, 102 P.3d at 344. Because a bad faith insurance claim requires, in part, the same determination of reasonableness as a section 10-3-1115 claim, it follows that in some cases, expert testimony is not required to establish the standard of care under section 10-3-1115. See id.
¶ 55 We thus reject State Farm's contention that the exclusion of its expert's testimony necessarily was prejudicial because the expert would have testified to insurance industry standards. Instead, we look to the expert's report and State Farm's offer of proof to determine whether the exclusion of *995 the specific proffered testimony substantially influenced the outcome of the case or impaired the basic fairness of the trial.
¶ 56 State Farm's expert's report discloses his opinion that (1) State Farm had no obligation to pay Fisher its initial settlement offer; (2) State Farm never admitted that Fisher was entitled to payment for his billed medical expenses and the amounts billed for medical expenses were not undisputed; and (3) due to Fisher's lack of cooperation with State Farm's investigation and his provision of allegedly inconsistent information, an assertion that the amount of medical expenses is undisputed could not be accurate.
¶ 57 State Farm contends that even though Fisher's expert's proffered testimony opining that State Farm had an obligation to pay its initial settlement offer was excluded, Fisher asserted this same theory of unreasonable delay-failure to pay an initial settlement offer-through the testimony of lay witnesses.
¶ 58 However, as we concluded above, this was not the claim that ultimately went to the jury, and thus testimony on this issue would have needlessly confused the jury in violation of CRE 403. Moreover, the jury was correctly instructed that testimony regarding State Farm's settlement offer "cannot be considered for proving liability on [Fisher's] claim," thus rendering any such testimony by State Farm's expert duplicative.
¶ 59 State Farm argued the other two theories contained in the expert's disclosed opinion at trial, and its representative testified extensively regarding its position that the amount of benefits owed was not undisputed and that Fisher's lack of cooperation was the cause of the delay of payment, not its own conduct. Also, the trial court instructed the jury that an insured had a duty to cooperate with the insurer.
¶ 60 Thus, the only additional information the expert's disclosed testimony would have adduced is a bare assertion that "in [his] opinion, State Farm's decision-making and its handling of [the] claim ... [were] fully supported by the applicable [insurance industry] standards, and the file [on the claim provided to him by State Farm] reflect[ed] that State Farm ... had a reasonable basis for what it [had] done and when it [had] done it." The report did not include any description of what these industry standards are or attempt to explain how State Farm's conduct comported with such standards. Thus, even if this minimal disclosure met the requirements of C.R.C.P. 26(a)(2), we cannot say with fair assurance that the exclusion of this conclusory opinion, without more, was so prejudicial to State Farm that a new trial is required.
¶ 61 Lastly, in State Farm's offer of proof regarding the expert's testimony, it asserted that its expert would testify that the failure by an insurer to pay an insured's medical bills is not unreasonable conduct in the UIM context because "[t]here's one UIM claim," not "one UIM claim for medical expenses and one for pain and suffering, [and] another-that's not the case. It's all one UIM claim under terms of the insurance contract." We reject State Farm's argument that the exclusion of this testimony constituted prejudicial error.
¶ 62 First, if the purpose of this proffered testimony was to form the basis of an argument that State Farm had no obligation to pay part of Fisher's UIM claim, this argument is inconsistent with Colorado law, as we have concluded above. State Farm could not have suffered legal prejudice by the exclusion of an expert opinion that was contrary to the law.
¶ 63 Second, the expert's report did not contain the opinion expressed in State Farm's offer of proof. A party's disclosure of a retained expert must be accompanied by a written report or summary that "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor." C.R.C.P. 26(a)(2)(B) (emphasis added). "A party that without substantial justification fails to disclose information required by C.R.C.P. Rule[ ] 26(a) ... shall not, unless such failure is harmless, be permitted to present any evidence not so disclosed at trial." C.R.C.P. 37(c)(1). The exclusion of an opinion that the trial court was required to exclude for failure to properly disclose cannot logically support a determination that State Farm was prejudiced by its exclusion.
*996 ¶ 64 Accordingly, we conclude that the trial court's exclusion of State Farm's expert's testimony does not require a new trial.
IV. Evidence of Fisher's Prior Felony Convictions
¶ 65 State Farm argues that because Fisher introduced testimony that the sole cause of his income loss was his injuries from the accident, it should have been permitted to introduce evidence of his prior felony convictions.[4] According to State Farm, because Fisher's prior convictions could have impacted his employability (even though they were over five years old), they were relevant to the amount of lost income damages Fisher incurred as a result of the accident. State Farm therefore contends that the trial court abused its discretion in excluding evidence of Fisher's felony convictions. We do not address this argument.
A. Proceedings in the Trial Court
¶ 66 Fisher moved in limine to exclude evidence of his felony burglary conviction that had occurred more than ten years before the trial. The court granted the motion.
¶ 67 At trial, Fisher introduced testimony from a clinical psychologist who provided vocational rehabilitation services, which entailed evaluating what kind of work someone who had been injured could perform and his or her maximum earning potential. The psychologist testified that the "vocational evaluation" he had performed on Fisher showed that, due to the physical and psychological injuries Fisher had sustained, Fisher could not return to the type of employment he had held prior to the accident but that he might be eligible for a different type of work. The psychologist opined regarding the difference in the amount of money Fisher would have made if he could have returned to his prior job versus the amount he could make in the type of job he might be able to obtain.
¶ 68 At the conclusion of Fisher's direct examination of the psychologist, State Farm requested that the trial court reconsider its determination that evidence of Fisher's prior felony convictions was inadmissible. State Farm argued that because the psychologist had testified about factors affecting Fisher's employability, it should be permitted to ask him about the effect Fisher's criminal record would have on his employment options and income potential. The court refused to reconsider its prior ruling.
B. Analysis
¶ 69 Section 13-90-101, C.R.S.2014, provides:
.... [T]he conviction of any person for any felony may be shown for the purpose of affecting the credibility of [a] witness. The fact of such conviction may be proved like any other fact.... Evidence of a previous conviction of a felony where the witness testifying was convicted five years prior to the time when the witness testifies shall not be admissible in evidence in any civil action.
¶ 70 In 1979, a division of this court held that section 13-90-101 precluded the admission of the plaintiff's prior felony conviction, which had been proffered for the purpose of mitigating damages recoverable by the plaintiff. Havens v. Hardesty, 43 Colo.App. 162, 600 P.2d 116, 119 (1979). The division reached this result because the conviction was more than five years old and it concluded that "[t]he language of the statute is mandatory and not discretionary." Id.
¶ 71 Both parties' appellate briefs presume that the trial court's ruling excluding evidence of Fisher's felony convictions was based on Havens ' interpretation of section 13-90-101. At oral argument, however, Fisher's counsel argued that the ruling was based on CRE 403. Additionally, Fisher's motion in limine argued that the evidence was inadmissible under both Havens ' interpretation of the statute and the rules of evidence. State Farm has not provided us with a transcript of the pretrial hearing at which the court granted Fisher's motion to *997 exclude the evidence, and the discussion at trial that referenced that ruling does not clearly establish whether the basis of the court's order was section 13-90-101, Havens, or the rules of evidence.
¶ 72 It is State Farm's responsibility, as the appellant, to provide us with a complete record demonstrating the asserted error. People v. Ullery, 984 P.2d 586, 591 (Colo.1999). In the absence of such a record, we must presume the trial court's ruling was correct. Id. ; see also Hock v. N.Y. Life Ins. Co., 876 P.2d 1242, 1252 (Colo. 1994). Because State Farm did not present a sufficient record upon which we can review the court's findings and conclusions, we presume that the court correctly excluded evidence of Fisher's felony convictions. We thus do not address State Farm's argument that Havens was wrongly decided.
¶ 73 Accordingly, State Farm is not entitled to a new trial on economic damages.
V. Conclusion
¶ 74 The judgment is affirmed.
JUDGE LICHTENSTEIN and JUDGE NAVARRO concur.

The Model Civil Jury Instructions support our conclusion that, to succeed on a claim under section 10-3-1115, C.R.S.2014, the plaintiff need not establish that the defendant insurer denied or delayed payment of the plaintiff's entire insurance claim; rather, the plaintiff must establish only that "[t]he defendant (denied) (delayed) payment of benefits to the plaintiff" and "[t]he defendant's (denial) (delay) of payment was without a reasonable basis." CJI-Civ. 4th 25:4 (2014).

However, even had State Farm shown that its policy required a claimant to establish his or her entire UIM claim before State Farm would issue payment on some of the claim, we would reach the same result. A provision in an insurance policy that dilutes, conditions, or limits statutorily mandated coverage is void and unenforceable. DeHerrera v. Sentry Ins. Co., 30 P.3d 167, 173 (Colo.2001) ; Jordan v. Safeco Ins. Co. of Am., 2013 COA 47, ¶ 22, 348 P.3d 443. Because we have concluded that section 10-3-1115, C.R.S.2014, prohibits an insurer from unreasonably delaying or denying payment on part of a claim under the circumstances of this case, a provision in an insurance policy that permitted such an action would be unenforceable.

We reject State Farm's contention in its reply brief that it preserved this issue because it argued below that the statutes should not be interpreted so broadly as to encompass its conduct in this case. Because that argument did not raise a constitutional issue, it was insufficient to preserve a constitutional claim for appeal.

Both parties consistently refer to Fisher's "prior felony convictions," plural, not his "prior felony conviction," singular. Although the record establishes that Fisher has a prior felony burglary conviction, neither of the parties explained, or provided a citation to where the record established, the fact of multiple convictions.